USDC SCAN INDEX SHEET

















NMC    5/18/05    16:02

3:05-CV-01059   STEWART V. RYAN

*1*

*PWRITHC.*



DeArcey Jamul Stewart

NAME    J15499

PRISON NUMBER

CSP, P.O. Box 5002

CURRENT ADDRESS OR PLACE OF CONFINEMENT

CALIPATRIA, CA 92233

CITY, STATE, ZIP CODE

| 2254 | X | 1933 |

FILING FEE PAID

Yes ___    No X

IFP MOTION FILED

Yes ___    No ___ X

FILED

'05 MAY 17 PM 3:59

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY ___    DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

DeArcey Jamul stewart

(FULL NAME OF PETITIONER)

PETITIONER

v.

Stuart J. Ryan, Warden (A) et al

(NAME OF WARDEN, SUPERINTENDENT, JAILOR, OR AUTHORIZED
PERSON HAVING CUSTODY OF PETITIONER [E.G., DIRECTOR OF THE
CALIFORNIA DEPARTMENT OF CORRECTIONS])

RESPONDENT

and

Bill Lockyer

The Attorney General of the State of
California, Additional Respondent.

'05 CV 1 05 9 BTM    (RBB)

Civil No ___

(TO BE FILLED IN BY CLERK OF U.S. DISTRICT COURT)

~~FIRST AMENDED~~

PETITION FOR WRIT OF HABEAS CORPUS

UNDER 28 U.S.C. § 2254
BY A PERSON IN STATE CUSTODY

1.  Name and location of the court that entered the judgment of conviction under attack: SAN Diego County Superior Court, 220 West Broadway San Diego, CA 92101

2.  Date of judgment of conviction: April 12, 1996

3.  Trial court case number of the judgment of conviction being challenged: SCD 116366

4.  Length of sentence: Two consecutive Life Terms plus Seven years.

CIV 68 (Rev. Dec. 1998)

00CV2224

5.  Sentence start date and projected release date: 7/18/96– Release date unknown.

6.  Offense(s) for which you were convicted or pleaded guilty (all counts): Two counts of attempted murder and possession of a firearm.

7.  What was your plea? (CHECK ONE)
    (a)  Not guilty        ☒
    (b)  Guilty            ☐
    (c)  Nolo contendere   ☐

8.  If you pleaded not guilty, what kind of trial did you have? (CHECK ONE)
    (a)  Jury        ☒
    (b)  Judge only  ☐

9.  Did you testify at the trial?
    ☐ Yes   ☒ No

## DIRECT APPEAL

10. Did you appeal from the judgment of conviction in the <u>California Court of Appeal</u>?
    ☒ Yes   ☐ No

11. If you appealed in the <u>California Court of Appeal</u>, answer the following:
    (a)  Result: Denied
    (b)  Date of result, case number and citation, if known: 12/17/98 Case No. #D0–26580

    (c)  Grounds raised on direct appeal: All evidence the is material or crucial to the issue of guilt of an accused is discoverable an must be provided to the defendant. The People's failure to provide the discovered statements of William Allen amounted to prosecutorial misconduct requiring reversal of defendant Stewart's conviction.

12. If you sought further direct review of the decision on appeal by the <u>California Supreme Court</u> (e.g., a Petition for Review), please answer the following:
    (a)  Result: Denied.
    (b)  Date of result, case number and citation, if known: _____

    (c)  Grounds raised: All evidence the is material or crucial to the issue of guilt of an accused is discoverable an must be provided the the defendant; The people's failure to provide the discoverable statements of William Allen amounted to prosecutorial miscondouct reversal of defendant Stewart's conviction.

13. If you filed a petition for certiorari in the <u>United States Supreme Court</u>, please answer the following with respect to that petition:

   (a) Result: _____

   (b) Date of result, case number and citation, if known: _____

       _____

   (c) Grounds raised: _____

       _____

       _____

       _____

## COLLATERAL REVIEW IN STATE COURT

14. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the <u>California Superior Court</u>?
☒ Yes  ☐ No

15. If your answer to #14 was "Yes," give the following information:

   (a) <u>California Superior Court</u> Case Number: 116366

   (b) Nature of proceeding: Petition For Habeas corpus

   (c) Grounds raised: See attached petition for habeas corpus p. 6.

       _____

       _____

       _____

   (d) Did you receive an evidentiary hearing on your petition, application or motion?
☐ Yes  ☒ No

   (e) Result: DENiEd

   (f) Date of result: 12-16-02

16. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the <u>California Court of Appeal</u>?
☒ Yes  ☐ No

17. If your answer to #16 was "Yes," give the following information:

    (a) California Court of Appeal Case Number: DO41599

    (b) Nature of proceeding: Petition For Habeas Corpus

    (c) Grounds raised: See attached petition for habeas corpus p. 6-9

    (d) Did you receive an evidentiary hearing on your petition, application or motion?
    ☐ Yes ☒ No

    (e) Result: DENiEd

    (f) Date of result: MAY . 2003

18. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the California Supreme Court?
☒ Yes ☐ No

19. If your answer to #18 was "Yes," give the following information:

    (a) California Supreme Court Case Number:

    (b) Nature of proceeding: Petition For Habeas corpus

    (c) Grounds raised: See attached Petition For Habeas Corpus p. 6-9

    (d) Did you receive an evidentiary hearing on your petition, application or motion?
    ☐ Yes ☒ No

    (e) Result: DENiEd

    (f) Date of result: August 2004

20.  If you did *not* file a petition, application or motion (e.g., a Petition for Review or a Petition for Writ of Habeas Corpus) with the <u>California Supreme Court</u>, containing the grounds raised in this federal Petition, explain briefly why you did not:

_____

_____

_____

_____

## COLLATERAL REVIEW IN FEDERAL COURT

21.  Is this your *first* federal petition for writ of habeas corpus challenging this conviction?
     ☒ Yes ☐ No    (IF "YES" SKIP TO #22)
     (a)  If no, in what federal court was the prior action filed? _____
          (i)  What was the prior case number? _____
          (ii) Was the prior action (CHECK ONE):
               ☐ Denied on the merits?
               ☐ Dismissed for procedural reasons?
          (iii) Date of decision: _____
     (b)  Were any of the issues in this current petition also raised in the prior federal petition?
          ☐ Yes ☐ No
     (c)  If the prior case was denied on the merits, has the Ninth Circuit Court of Appeals given you permission to file this second or successive petition?
          ☐ Yes ☐ No

CAUTION:

- **Exhaustion of State Court Remedies:**  In order to proceed in federal court you must ordinarily first exhaust your state court remedies as to each ground on which you request action by the federal court.  This means that even if you have exhausted some grounds by raising them before the California Supreme Court, you must first present *all* other grounds to the California Supreme Court before raising them in your federal Petition.

- **Single Petition:**  If you fail to set forth all grounds in this Petition challenging a specific judgment, you may be barred from presenting additional grounds challenging the same judgment at a later date.

- **Factual Specificity:**  You must state facts, not conclusions, in support of your grounds.  For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do.  A rule of thumb to follow is — state who did exactly what to violate your federal constitutional rights at what time or place.

## GROUNDS FOR RELIEF

22. State *concisely* every ground on which you claim that you are being held in violation of the constitution, law or treaties of the United States. Summarize *briefly* the facts supporting each ground. If necessary, you may attach pages stating additional grounds and/or facts supporting each ground.

(a) **GROUND ONE**: Based on Newly Discovered Evidence not known at trial which Trial which undermines the entire case of the prosecution, petitioner's Writ Of Habeas Corpus should Be Granted and His conviction Must Be Overturned.

Supporting FACTS (state *briefly* without citing cases or law) PetitioNER pRESENts to this couRt EvidENce ANd AffidAvids fRom iNdividuals who clAim they KNOW PetitioNER did Not Attempt to Kill MichEAl ANd MARK PARish. All individuals hEREiN ARE uNbiAsEd ANd hAvE NO REAsoN to fAbRicAte. ThE EvidENce hEREiN uNdERMiNES thE PROsEcutioN's CASE bEcAuSE it suggEsts thE dRivER wAS Not PEtitioNER, but RAthER DARNEll JACKSON. DARNEll JACKSON is Now A pRotEctEd PROSEcutioN iNfoRmANt/witNESS.

PEtitioNER bASES his HAbEAS clAiM ON NEwly DiscovERED EvidENce Not AvAilAblE At thE timE of tRiAl. JoANNE RoAkE, AttoR-NEy foR PEtitioNER's co-defENdANt, RichARd LEE, wAS coNtActEd by thE DistRict AttoRNEy's officE puRsuANt to BRAdy V. MARy-lANd (1963). ThE DistRict AttoRNEy iNfoRMED MRS. RoAkE thAt he hAd bEEN coNtActEd by DARNEll JACKSON, thRough his defENSE AttoRNEy. JACKSON's AttoRNEy mAdE AN offER of pRoof to thE DistRict AttoRNEy REgARdiNg iNfoRmAtioN DARNEll JACKSON hAS About cERtAiN uNSolvEd CASES. ONE of thoSE CASES wAS thE shootiNg of thE PARish bRothER's. AccoRdiNg to his AttoRNEy, DARNEll JACKSON told him thAt DE'ARcEy StEwARt ANd ARNold Adk-iNS (Not co-defENdANt LEE) wERE ActuAlly thE pEoplE who shot

Did you raise GROUND ONE in the California Supreme Court?
☒ Yes ☐ No.

COPIED AT 31 copier moov lie expense

the Parish brothers. Based on this new knowledge the District Attorney informed Mrs. Roake that Darnell Jackson's statements were consistent with the police reports with the exception of Adkins being identified as one of the shooters instead of Lee. Jackson told his Attorney that Richard Lee met with Adkins and Stewart at Anthony Riley's house after the shooting of the Parish brothers. Jackson stated that Lee came from a car function at Martin Luther King Park.

Petitioner's case is not the only case Darnell Jackson has had involvement in. Two Skyline gangmembers, Marquel Smith and Lazair Carter, were recently convicted of 75 counts of murder, robbery and assault stemming from a wave of robberies at small businesses. (see San Diego Superior Court No. SCD 137023-01). The trial featured the testimony of informant, Darnell Jackson. His testimony placed the pair at numerous robberies, as well as providing crucial information implicating Carter and Smith in the killing of a store clerk. Darnell Jackson informed the jury that one of the defendants admitted to the shooting. Furthermore, Jackson led police to the gun used in the killing. The prosecutor in the Marquel Smith case is the same prosecutor that contacted Richard Lee's Attorney with the exculpatory evidence. He is also the same prosecutor who prosecuted Darnell Jackson for robbery (see San Diego Superior Court Case No. 135940).

Based on the information recieved from the District Attorney, Richard Lee's Attorney began contacting individuals from the Skyline area to recieve more information. Through diligent investigation Richard Lee's Attorney obtained Affidavids from individuals with personal knowledge of both Richard Lee and Arnold Adkins. The Affidavids corroberate Darnell Jackson's claim that Arnold Adkins shot the Parish brothers (see Hab-

EAS Corpus HC.16243).

According to the District Attorney's office, Darnell Jackson's whereabouts are confidential, and his family are all in the witness protection program.

The evidence petitioner has been able to obtain thus far undermines the prosecution's case against petitioner. Darnell Jackson has admitted to Arnold Johnson his culpability in shooting the Parish brothers. Petitioner has obtained signed declarations from individuals revealing Arnold Adkins and Darnell Jackson's admissions as to their involvement in the shooting of the Parish brothers. This completely undermines the prosecution's case against petitioner because they did not base their theory on aiding and abetting, but rather, their theory was petitioner being the driver. The implication of Darnell Jackson eviscerates the key trial testimony against petitioner.

One witness has come forward to sign a declaration stating that Darnell Jackson confessed to his involvement in the shooting of the Parish brothers. Another witness has come forward to sign a declaration stating that shortly after the shooting of the Parish brothers, Darnell Jackson was in possession of a 357. Magnum revolver, of the type used in the shooting, and was trying to sell the gun as it was hot and had been used in shooting. This witness also stated that at the time Darnell Jackson was in the company of Arnold Adkins and was driving a rust colored Honda Automobile, a vehicle matching the discription of the vehicle used in the shooting of the Parish brothers.

Additionally, Roy Vinson signed a declaration claiming he had personal knowledge of Arnold Adkin's culpability. Roy Vinson is the uncle of Arnold Adkins. On or about Sept. 23, 95, Mr. Adkins told Mr. Vinson he had shot two men, who Mr. Vinson knew were the Parish brothers. Mr. Adkins'

EXPRESSED to MR. VINSON his WORRIES About what he should do. MR. VINSON told MR. Adkins not to WORRY About it because if the other MAN did not do it, they did not have A CASE against him. MR. VINSON'S declARATION is A VERY PERSUASIVE piece of evidence for petitioner because MR. VINSON is A RELETIVE of ARNOLD Adkins, AND MR. VINSON WAS willing to sign A declARATION that ACCUSED his nephew of Admitting to A CRIME.

Beyond Arnold JOHNSON'S AND ROY VINSON'S declARATIONS is the declARATION of TATIANNA DANIEL; who WAS DARNELL JACKSON'S girlfriend; presumably As intimate As ANYONE would be. TATIANNA DANIEL declARES that DARNELL JACKSON confided to her his pART in the shooting of the PARISH brothers, the CRIME for which petitioner DE'ARCEY STEWART is serving two life SENTENCES.

Such EVIDENCE UNDERMINES the PROSECUTION'S CASE because three UNRELATED witnesses claim they know petitioner did not shoot the PARISH brothers; three witnesses clearly identify A different culprit, DARNELL JACKSON, who CONFESSED his CRIME to ARNOLD JOHNSON AND TATIANNA DANIEL.

The strongest piece of EVIDENCE the PROSECUTION has against petitioner in the INSTANT CASE is MICHEAL PARISH identifying petitioner As the driver in a photographic line up from his hospital bed. HOWEVER, the CONFESSION by DARNELL JACKSON to two UNRELATED witnesses, strongly CONTRADICTS the identification. THEREFORE, petitioner should have the opportunity to present such EVIDENCE to A NEW TRIER of fact for CONSIDERATION.

Arnold Adkins Admitting to the CRIME of shooting the PARISH brothERS ON MORE thAN ONE OCCASION (SEE HC 16243), Admitting his culpability MORE thAN ONCE to MANY UNRELATED witnesses, Additionally, DARNELL JACKSON'S CONFESSIONS, is direct EVIDENCE linking A third pARTY to the Actual perpetration of the CRIME. ACCORDINGLY, petitioner's

WRIT should be granted to allow further investigation into the culpability of Darnell Jackson. There was no way for petitioner to anticipate the third party admissions made by Arnold Adkins and Darnell Jackson after petitioner was already incarcerated. Petitioner cannot be held responsible for statements of admission made after the fact. Arnold Adkins confessed to the shooting of the Parish brothers out of the guilt he felt because of Richard Lee's incarceration.

Darnell Jackson confessed to his involvement in the crime to Tati-anna Daniel perhaps out of ego or simply due to a close relationship with her, just weeks after the crime. He then confessed to Arnold Johnson, for whatever reason he had, in 1997, at the Adkins funeral. Both confessions occured while petitioner was already incarcerated. There is no evidence to suggest petitioner was not diligent in producing all his evidence at trial. The instant case is one of those rare cases where, after trial, new evidence most material to the issues of petitioner's case, which would have produced a different result, has now been discovered. Although petitioner has always maintained he was not the driver, during the trial there was no evidence of Darnell Jackson's confessions.

Moreover, a number of individuals have been contacted who had information regarding the Parish brothers shooting. However, through repeated attempts only three were willing to sign a declaration. This came about through many discussions and in decision. Petitioner wanted to file his petition until he had obtained as much information as possible in order to meet the heavy burden.

Based upon the declarations attached hereto, and the information set out in this petition, new evidence has been presented that undermines the entire case against petitioner and points unerringly

6(d)

towards his INNOCENCE. It is within the power of this court based on the information presented to grant petitioner's writ of Habeas Corpus.

Thus, petitioner contends the record in this case shows the testimony of Micheal and Mark Parish was unreliable and they falsely identified petitioner and co-defendant Lee as the perpetrators who shot them. Therefore, petitioner's conviction is based on perjured testimony which violated his constitutional due process rights to a fair trial under the 14th Amendment of the U.S Constitution. And had it not been for the Constitutional error no reasonable jury would have found him guilty.

In the instant case that is now before the court petitioner is asserting a constitutional violation that involves a fundamental miscarriage of justice which requires the miscarriage of justice exception available to him because he asserts a Federal Constitutional claim and a claim of "Actual Innocence".

Wherefore, the State Courts decision denying petitioner's Habeas Corpus is contrary to Federal Constitutional Law and fails to apply a controlling U.S Supreme Court case pursuant to 28 U.S.C § 2254 (d) (1). Williams V. Taylor (2000).

**(b)** **GROUND TWO**: The state court erred in denying petitioner's petition

for writ of habeas corpus.

**Supporting FACTS** (state *briefly* without citing cases or law): Petitioner Alleges and believes that the judgement of conviction and sentences are invalid as imposed in violation of the 14th Amendment of the Federal Constitution.

In this case Petitioner states a "Prima Facie" case for Habeas Corpus relief. Habeas Corpus is the appropiate remedy for petitioner's unlawful incarceration. Here, Petitioner alleges violation of fundamental due process rights under a newly discovered evidence claim.

Petitioner's contention within the instant writ of Habeas Corpus, is that the State Court erred in their denial of an evidentiary hearing. And that there were factual issues within dispute. And now Petitioner will demonstrate the factual issues within dispute...

(See Ex. "H", order denying petition by Superior Court, pg. 8, line 16-23) "The petition on its face persuaded the court to make a preliminary determination that petitioner would be entitled to the relief requested if his factual allegations were proved. (Cal. Rules of Court, Rule 4.551 (c)(1).) However, consideration of the evidence profferred in the People's Return has convinced this court that the petition is without merit, is based on contrived or atleast inaccurate evidence, and is supported by declarations from person's with biases towards petitioner and his co-defendant. Furthermore,

**Did you raise GROUND TWO in the California Supreme Court?**
☑ Yes ☐ No.

COPIED AT STATE EXPENSE
COPIER #004

The evidence presented genarally fails to undermine the prose-cution's entire case, is not conclusive in any respect, and fails to point to petitioner's innocence or reduced culpability."

The pertinent parts of said opinion comes from three different sets of reasons from the Superior Court. First, the "Prima Facie" case was established from petitioner's co-defend-ants relief of his Habeas Corpus. But if we examine said issue a little closer we will see that the one person who was crucial to petitioner's co-defendants relief, was co-defendant Richard Lee's close friend, Darnell Jackson, who's moral turpitude is bankrupt and who has a built in bias for his good friend, Richard Lee.

Besides this, according to Darnell Jackson's own admissions, as well as others, Jackson was at one time in possession of the weapon used in the said crime, also having a car that fits the original discription of said crime when it was initially reported to the police by the victims, as well as other witnesses.

Second, the trial courts consideration of the People's return within its return of the "Order to Show Cause", also needs a little more examination as well. In the trial of petitioner the prosecution called a witness, Kevin Brown, who testified that petitioner told him, "I'm P-du, I'm from Skyline, I killed your homeboy, now what?" The funny thing about this is, it is'nt said who had been killed (even if Brown's statement were true and correct) which boardlines a hearsay statement. Besides that, Kevin Brown is a convicted felon making the statement. But in the People's return answer they persuaded the court not to consider petitioner's declarants because of bias, convictions,

And the fact that ONE of the declarants (Arnold Johnson) said that the victims had died from the crime. But the People's witness at said trial of petitioner, said the exact same thing that the victims had died.

Also, Arnold Johnson's statement about Jackson being out of jail at the time of the Adkins funeral could have been proven by the records of the county jails release of Jackson, as well as the records and reciepts of his bonding out of jail by his bailbondsman.

Within the People's return they state that nothing can be corroberated, and if it could it would be inadmissable hearsay; as well as everyone being gangmembers with bias towards petitioner to commit fraud against the court. But the whole case against petitioner is one filled with fraud. The victims are gangmembers with an "AX to grind" (Kenneth Anderson's testimony that Micheal Parish didn't know who shot him and his family wanted him to testify - Rt 1467 - 1476). The lead investigator, Sylvester Wade, is a close reletive (brother-inlaw) of the victims. The victims, gang members, who don't know who their enemies are, but could find out who shot them before the police could, even before their brother-inlaw, who's a cop and lives very close to the scene of the crime.

These are factual disputes which could have been resolved had there been an evidentiary hearing. Petitioner contends that the error of the state court in denying an evidentiary hearing denied petitioner of his fundamental due rights. And petitioner prays that this distinguished court grants him the opportunity that the lower court failed to.

7(b)

The People allege within their Return that Petitioner was trying to defraud the State of California through perjury. Petitioner denied aforesaid allegation within his traverse, and now contends that said allegation by the People required the Superior Court to conduct an evidentiary hearing upon the truth of aforesaid allegation.

Petitioner will now address the final issue as to whether the denial of said Writ of Habeas Corpus was out an evidentiary hearing was warranted: " Petitioner's evidence lacks credibility and doesn't go towards the undermining of the prosecution's case in chief, it doesn't point towards petitioner's innocence... (Ex. "H", order denying petition by Superior Court).

These are the reasons relied on by the State Courts in their determination of petition, and petitioner will now ask this Court to look at the instant petition in a different light; A light which will show that petitioner is entitled to the relief sought within this Writ of Habeas Corpus and final prayer for relief as well.

If the court will examine the entire prosecution's case against petitioner, it will see that it was one based entirely on identification; where the victims are gangmembers themselves and that they are the one's who informed the police who the assailants were... No, the victim, Micheal Parish, told his brother-inlaw, Det. Sylvester Wade who the assailants were. Det. Wade then proceeded to obtain petitioner's and co-defendant Lee's identification through gang files, and then Det. Wade asked the victims to identify the assailants (no one thinks or gave a thought to the suggestiveness of the aquirement of

the aforesaid names and the identification of petitioner and his co-defendant.)

Besides this identification of petitioner there wasn't any other direct evidence that petitioner and his co-defendant were the ones who committed the crime. Petitioner, who was to be so hellbent on committing gang violence, that he would do it while the sun was still out in his mothers luxury car, very close to his grandmothers home. That mother, who drove this car to work everyday, would have had to drive through the same route everyday after the crime; with no fear of retaliation upon him or his family, if you are to believe the victims and their other gang members (friends) story that they knew who did this crime.

Now, the court is to look at the new evidence in one or two ways. Either petitioner's guilt is without doubt and the writ is a waste of everyone's time and effort. OR, go beyond the surface and see the new evidence for what it really is... Co-defendant Richard Lee's good friend, Darnell Jackson, who happens to be an informant for the San Diego's D.A's office, decided to give a statement that would help his good friend Richard Lee get out of trouble. Not wanting to jeopardize his standing within the protective custody he and his family were enjoying, he made sure he excluded himself from said crime. Now, because Mr. Jackson has provided testimony before, the courts, lawyers and everyone believes him and co-defendant Lee achieves said relief that he sought.

Petitioner contends that co-defendant Lee's misidentification alone undermines the prosecution's case in chief, for the victims on numerous occasions identified co-defendant Lee as well as petitioner.

7(d)

And now we know that those identifications are false and thus unreliable. From this, petitioner found and brought witnesses through declarations claiming that petitioner was not the person that was part of the aforesaid crime.

The question petitioner will ask this court is, why should his evidence, which is newly discovered, be looked upon with scorn and mistrust? How can petitioner's due process right to a fair trial not be violated by sitting as a co-defendant who's charged with attempted murder, when the actual shooter is the wrong man? The prejudice of the trial against petitioner goes to the heart of his claim of "Actual Innocence".

(c) **GROUND THREE**: Petitioner's case should be reversed because he is 'Actually Innocent'.

Supporting FACTS (state *briefly* without citing cases or law): PETITIONER STATES A CLAIM OF "ACTUAL INNOCENCE". PETITIONER CONTENDS THAT HIS CONVICTION WAS THE RESULT OF PERJURED TESTIMONY BY THE PROSECUTING WITNESSES. PETITIONER WAS NOT ABLE TO PROVE THAT THE PROSECUTION'S WITNESSES FALSELY IMPLICATED HIM AS ONE OF THE PERPETRATOR'S WHO WAS INVOLVED IN THE SHOOTING OF THE PARISH BROTHERS UNTIL AFTER HE WAS CONVICTED.

JOANNE ROAKE, ATTORNEY FOR PETITIONER'S CO-DEFENDANT, RICHARD LEE, WAS CONTACTED BY THE DISTRICT ATTORNEY'S OFFICE PURSUANT TO BRADY V. MARYLAND (1963). THE DISTRICT ATTORNEY INFORMED MRS. ROAKE THAT HE HAD BEEN CONTACTED BY DARNELL JACKSON, through his defense ATTORNEY. JACKSON'S ATTORNEY MADE AN OFFER OF PROOF TO THE DISTRICT ATTORNEY REGARDING INFORMATION DARNELL JACKSON HAS ABOUT CERTAIN UNSOLVED CASES. ONE OF THOSE CASES WAS THE SHOOTING OF THE PARISH BROTHERS. ACCORDING TO HIS ATTORNEY, DARNELL JACKSON TOLD HIM THAT PETITIONER DE'ARCEY STEWART AND ARNOLD ADKINS (NOT CO-DEFENDANT LEE) WERE ACTUALLY THE PEOPLE WHO SHOT THE PARISH BROTHERS (SEE EX. "D", DECLARATION OF JOANNE ROAKE). AS A RESULT OF THE INFORMATION DARNELL JACKSON PROVIDED TO THE DISTRICT ATTORNEY, CO-DEFENDANT LEE'S CONVICTION WAS OVERTURNED AND SENTENCE VACATED. (SEE EX. "E", ORDER REVERSING LEE'S CASE.). ON OR ABOUT APRIL 20, 2001, DEFENSE COUNSEL FOR PET-

Did you raise GROUND THREE in the California Supreme Court?

☒ Yes ☐ No.

itioner Stewart recieved information from several individual informing him that petitioner had been wrongly convicted. In case No. # SCD 116366. After recieving this information petitioner's attorney filed a Habeas Corpus, Superior Court on behalf of petitioner based on Newly Discovered Evidence (see ex. "F", declaration of M. Lee Haugen).

Petitioner contends that the newly discovered evidence shows the Parish brothers and prosecution witnesses knowingly/falsely identified petitioner as one of the perpetrators involved in the shooting. Mark Parish testified that petitioner was the driver of a brownish rust colored BMW and that Co-defendant Lee shot him and his brother from the passenger seat of the vehicle (Rt 527, 528, 529, 532). Micheal Parish testified that he was shot from a vehicle that petitioner was the driver and co-defendant Lee was the passenger in the vehicle who had shot him (Rt 723-736). Also, Micheal Parish testified that he initially told his brother-in-law, who is also the investigating officer, the discription of the car was rust colored (Rt 732; 734).

Petitioner contends that his conviction was based largely on the testimony of Kevin Brown. Mr. Brown testified that he and William Allen were on the Grossmont College football team and that petitioner came up to the college to talk to Allen. Brown said that after the practice petitioner was talking to Allen in the parking lot, and as he (Brown) was walking to his car petitioner stopped his conversation with Allen and called to him. Brown stated that he went over to petitioner who was standing 20 feet away with Allen at the time, and petitioner

told Brown he killed one of his homeboys (RT 1286, 1291, 1298

The prosecution interviewed William Allen several times prior to trial and was aware that the investigator Mike Howard, for the prosecution, took written statements from Allen (11-17, 25-28). Allen told investigator Howard that he did not have a conversation with petitioner Stewart on Sept. or Oct. 1995, in the parking lot of Grossmont College (RT 15, 14-28).

Petitioner's defense attorney was not aware of William Allen's statement until after Kevin Brown testified. Trial counsel immediately requested the prosecution to turn over the name of William Allen and the statement taken from him. Subsequently, petitioner was convicted. Trial counsel for petitioner did not discover the material evidence of Mr. Allen until after petitioner was convicted (see petitioner's Apellant opening brief, Court of Appeals No. # D025580). The undisclosed evidence demonstrates that the prosecution's case includes perjured testimony and that the prosecution knew or should have known of the perjury.

Therefore, petitioner contends that the state court violated his constitutional rights by withholding the William Allen material evidence, violating his due process rights under U.S.C.A Const. Amends. 5th, 14th. Thus, had it not been for the constitutional error by the prosecutor, no reasonable juror would have convicted petitioner in light of the new evidence.

Furthermore, under newly discovered evidence petitioner Attorney obtained information from several individuals inform-

8(b)

ing him that petitioner had been wrongly convicted in the shooting of the Parish brothers. Roy Vinson informed petitioner's attorney that Darnell Jackson was the driver of the vehicle from which petiold Adkins had shot the Parish brothers and that on Sept. 23, 1995, Jackson had been in possession of a .357 magnum revolver which had been involved in a shooting and was trying to sell it to Mr. Vinson (see Ex. "A").

On June 10, 2001, Arnold Johnson informed petitioner's attorney that he was the cousin of Arnold Adkins, previously identified by Darnell Jackson as the person who actully shot the Parish brothers. Arnold Johnson further told petitioner's attorney that Darnell Jackson admitted to him of being the driver of the vehicle used in the shooting of the Parish brothers. Arnold Johnson also told petitioner's attorney that in 1995 he had seen Jackson driving a rust colored Honda 4 door vehicle with tinted windows (see Ex. "B")

On May 6, 2002, Tatianna Daniel informed petitioner's attorney that she was a former girlfriend of Darnell Jackson and that Jackson confessed to her his involvement in the shooting of the Parish brothers (see Ex. "C").

Petitioner contends that these declarations corroberate his claim of "Actual Innocence" and support the record in this case that the prosecuting witnesses knowingly gave perjured testimony convicting an innocent man. For instance, Micheal Parish testified that petitioner was the driver of the car he had been shot from (Rt 723, 736). However, Kenneth Anderson testified to have known Micheal Parish for 10 yrs. and in Dec. 1995, while he talked to Parish on the phone, Micheal Parish told Anderson

he did not know who shot him, but was getting a lot of press to testify from his parents and his brother-in-law, det. Wade (Rt 1467-1472). Micheal Parish told Anderson he identified petitioner, though unsure, because Stewart made him angry by smiling at him (Rt 1476).

Both of the Parish brothers testified that the car they had been shot from was brown, rust colored (Rt 527, 532, 732, 734). Also, Steven Shelton, who witnessed the shooting, told the police that the car the shots came from was a dark gray or biege '79 Honda Accord. Thus, the victims testimony and the police report of witness Steven Shelton corroberates Arnold Johnson's declaration that Darnell Jackson was the driver of the car that the Parish brothers were shot from, not petitioner. Petitioner contends that no reasonable juror would have convicted him in light of the new evidence that is presented to this court as declarations from three individuals.

Clearly petitioner in this case has demonstrated multiple constitutional violations. Clearly petitioner has shown "Actual Innocence" and this case should be reversed. Petitioner contends that the 14th Amendment due process garuntee support of his claim, that his showing of innocence entitles him to a neversal, or atleast a new trial. Thefore, the State Court's decision was contrary to, or involved an unreasonable application of clearly established Federal Law, as determined by the United States Supreme Court under 28 U.S.C Subs. 2254 (d) (1).

(d) **GROUND FOUR**: _____ Due to Newly Discovered Evidence, the evidence in petitioner's case is insufficient as a mater of law to sustain an attempted murder conviction.

Supporting FACTS (state _briefly_ without citing cases or law): PETiTioNER CONTENds that the iNSufficiENT 'EvidENCE iN this CASE is bASEd lARGEly ON NEwly DiscovEREd EvidENCE NOT KNOWN AT tRiAl. PETiTioNER discovEREd through his AttoRNEY thAT co-dEfENdANT RichARd LEE's AttEMPTEd MuRdER coNvicTioN wAS REvERSEd AftER JoANNE RoAKE, AttoRNEY foR co-defENdANT RichARd LEE, wAS CoNTACTEd by the DisTrict AttoRNEY puRSuANT to BRAdy V. MARylANd (1963).

    The DisTrict AttoRNEY iNfoRMEd MRS. RoAKE thAT hE hAd bEEN CoNTACTEd by DARNEll JAcKSoN, through his dEfENSE AttoRNEY. JAcKSoN's AttoRNEY MAdE AN offER of pRoof to thE DisTrict AttoRNEY REGARdiNG iNfoRMATioN DARNEll JAcKSoN hAS AbouT CERTAiN uNSolvEd CASES. ONE of thoSE CASES wAS thE shooTiNG of thE PARiSh bRothERS. AccoRdiNG to his AttoRNEY, DARNEll JAcKSoN told hiM thAT pETiTioNER DE'AR-CEY STEwART ANd ARNold AdKiNS (NoT co-defENdANT LEE) wERE ACtuAlly thE pEoplE who shot thE PARiSh bRothERS. BASEd oN this NEw KNowlEdGE thE DisTrict AttoRNEY iNfoRM-Ed MRS. RoAKE thAT DARNEll JAcKSoN'S STATEMENTS wERE CoNSiSTENT with thE PolicE REpoRtS with thE ExcEPTioN of AdKiNS bEiNG idENTifiEd AS oNE of thE shooTERS iNSTEAd of co-defENdANT LEE.

    JAcKSoN told his AttoRNEY RichARd LEE MET up with AdKiNS ANd STEwART AT ANthoNy RilEy's houSE AftER thE

COPIED AT 'i
COPIER #004
the .ExpENSE

Did you raise GROUND FOUR in the California Supreme Court?

☒ Yes ☐ No.

Shooting of the Parish brothers. Jackson stated that Lee came from a car function at Martin Luther King Park.

Petitioner contends that the record in this case is insufficient to sustain his attempted murder conviction; Petitioner asserts that in this present case the circumstances indicate that the evidence is insufficient and not reliable.

① Mark Parish positively identified petitioner and co-defend Lee, he testified that he saw petitioner and co-defendant Lee standing near a house outside on the curb in front of a B.M.W, as they drove by he looked at the faces of both petitioner and co-defendant Lee, and they are the same people in court (RT 511-514). Mark Parish further testified that petitioner was the driver of the B.M.W and co-defendant Lee was the passenger and they drove up to the side of the car and co-defendant Lee pointed a gun towards the heads of him and his brother and began shooting (RT 527-532). ② Micheal Parish testified he and his brother were driving down Skyline dr. and he saw petitioner and co-defendant Lee at a house standing by a rust colored BMW (RT 714-716). Micheal Parish further testified that petitioner and co-defendant Lee pulled up in a B.M.W next to the car him and his brother were in, that he saw co-defendant Lee with a gun in his hand, and co-defendant Lee pointed the gun and started shooting (RT 722-724). ③ Micheal Parish testified that prior to Sept. 23, 1995, he had never seen petitioner or co-defendant Lee and did not know their names or gang monikers. (CT 90-91) ④ Micheal Parish testified that the only way he knew petitioner and co-defendant Lee was while in the hospital he recieved phone calls from numerous people who told him that P-du and

9(a)

PUFFEROO WERE the people involved in the shooting (ct 96; EX "I").
⑤ AFTER Micheal Parish received the information of the names
of the people that shot him, he told his brother-inlaw, det. S.
Wade, who also is the investigating officer in this case, and
subsequently det. Wade went to the gang file and found that
P-du's real name was De'Arcey Stewart. He put together
a photo line up, and on Oct. 2, 1995 det. Wade showed
Micheal Parish a photo line up of petitioner and Co-defend-
ant Lee (EX. "I"). ⑥ Cleary the record in this case shows
the information provided to Micheal Parish was false and led
to the conviction of two innocent people. ⑦ Co-defendant
Richard Lee's conviction was reversed as a result of info-
rmation offered to the District Attorney by Darnell Jackson
who told the district Attorney that it was not Richard Lee
who shot the Parish brothers, instead it was petitioner and
Arnold Adkins (EX. "D", "E"). ⑧ Under Newly Discovered evidence
petitioner submitted to the court three (3) declarations of
Roy Vinson, Arnold Johnson, and Tatianna Daniel who stated
that Darnell Jackson confessed to them that it was him and
Arnold Adkins who shot the Parish brothers, not petitioner
(EX. "A", "B", "C").

Petitioner contends, considering the state court rev-
ersed Co-defendant Richard Lee's attempted murder con-
viction based on the information provided by Darnell Jacks-
on, deems the victims Mark and Micheal Parish testimony
unreliable and his conviction is the result of mistaken iden-
tification. Therefore, the evidence in this case is insufficient
to sustain an attempted murder conviction.

Furthermore, the information provided by Darnell Jackson concerning petitioner (Ex "D") cannot be considered reliable because the state denied petitioner's due process right to confront his accuser. Darnell Jackson informed the District Attorney that petitioner was the driver of the car that the Parish brothers were shot from. Petitioner attempted to question Jackson through his attorney but was informed by the District Attorney's office that Darnell Jackson is in a witness protection program and that his whereabouts cannot be disclosed.

Thus, in light of the newly discovered evidence and had it not been for the constitutional errors no reasonable jury would have found petitioner guilty beyond a reasonable doubt. This case that is now before the court warrants an evidentiary hearing.

Petitioner contends the state courts decision in this case was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the United States Supreme Court under 28 U.S.C Subs 2254(d)(1).

## Conclusion

Petitioner, for the reasons stated herein, prays that this court issues an order to show cause, and, remand to the Superior Court for an evidentiary hearing, and whatever relief the court deems appropriate for petitioner in this petition.

Respectfully Submitted,

De'Arcey Stewart
5/15/05

9(c)

23. Do you have any petition or appeal **now pending** in any court, either state or federal, pertaining to the judgment under attack?
□ Yes  ☒ No

24. If your answer to #23 is "Yes," give the following information:

    (a) Name of Court: _____

    (b) Case Number: _____

    (c) Date action filed: _____

    (d) Nature of proceeding: _____

    _____

    (e) Grounds raised: _____

    _____

    _____

    _____

    _____

    (f) Did you receive an evidentiary hearing on your petition, application or motion?
□ Yes  □ No

25. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:  M. Lee Haugen, 693 S. Magnolia Avenue
    (a) At preliminary hearing: _____
El Cajon, CA 92020.

    (b) At arraignment and plea: Same as above _____

    (c) At trial: _____ Same as above _____

    (d) At sentencing: _____ Same as above _____

    (e) On appeal: _____ Milton C. Grimes, 2382 Southest Bristol, Suite "B" Newport
Beach, CA 92660
    (f) In any post-conviction proceeding: _____ M. Lee Haugen 693 S. Magnolia Ave.
El Cajon, CA 92020.

    (g) On appeal from any adverse ruling in a post-conviction proceeding: _____
_____

26. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?

☒ Yes   ☐ No

27. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?

☐ Yes   ☒ No

   (a) If so, give name and location of court that imposed sentence to be served in the future:

_____

   (b) Give date and length of the future sentence: _____

_____

   (c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?

   ☐ Yes   ☐ No

28. Date you are mailing (or handing to a correctional officer) this Petition to this court: _____

_____ *MAY 15, 2005* _____

Wherefore, Petitioner prays that the Court grant Petitioner relief to which he may be entitled in this proceeding.

_____

SIGNATURE OF ATTORNEY (IF ANY)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

*5/15/05*_____    *De'Arcey Stewart*_____

(DATE)    SIGNATURE OF PETITIONER

# EXHIBIT "A"

1  M. LEE HAUGEN, ESQ.
   SBN 64186
2  693 S. Magnolia Avenue
   El Cajon, CA 02020
3  (619) 442-0483

4  Attorney for De Arcey Stewart

5

6

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9               IN AND FOR THE COUNTY OF SAN DIEGO

10

11

12  The People of the State          )    CASE NO.
    of California,                   )
13                                   )    DECLARATION OF ROY VINSON
                                     )    IN SUPPORT OF HABEAS CORPUS
14          Plaintiff,               )
                                     )
15  vs.                             )
                                     )
16  De Arcey Stewart,               )
                                     )
17          Defendant.              )

18          I Roy Vinson Declare:

19  1.    I am currently an inmate at Salinas Valley State Prison.

20  2.    I am the uncle of Arnold Adkins.

21  3.    Arnold Adkins died on April 8, 1997.

22  4.    I was placed into custody on the sentence I am currently serving on September 26,

23        1995.

24  5.    A few days prior to going into custody, Arnold Adkins and his good friend Darnell

25        Jackson came to my home. They arrived in a rust colored Honda automobile.

26        Darnell Jackson was in possession of a .357 caliber revolver which he said had been

27        used in a shooting, was "hot" (stolen) and he was trying to get rid of. I took that to

28

Declaration of Roy Vinson                              Case No.

EXHIBIT "A"

mean he wanted to sell it.  I told Darnell Jackson I didn't want it around my mother's home, with whom I was living.  Darnell Jackson later left taking the pistol with him.

6.  At about this same time Arnold Adkins told me that he had shot two men, who I now know were the Parish brothers.  While Arnold did not identify by name the person who was involved in the shooting with him, Arnold did tell me that the person with him at the time of the shooting was one of his "homies", close friend.  I knew that Darnell Jackson was a good friend of Arnold and they used to spend a lot of time together.

7.  I have no connection with De Arcey Stewart other than to have met him at the Salinas Valley Prison.

8.  I have no reason to swear falsely for De Arcey Stewart in this matter.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed on  MAY 6 _____, 2001, at Soledad, California.

_Roy Vinson_
ROY VINSON

---

Declaration of Roy Vinson                    2                    Case No.

# EXHIBIT "B"

M. LEE HAUGEN, ESQ.
SBN 64186
693 S. Magnolia Avenue
El Cajon, CA 92020
(619) 442-0483

Attorney for DeArcey Stewart

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF SAN DIEGO

| The People of the State of California, | ) | CASE NO. |
|---|---|---|
| Plaintiff, | ) ) ) | DECLARATION OF ARNOLD JOHNSON IN SUPPORT OF HABEAS CORPUS |
| vs. | ) ) | |
| DeArcey Stewart, | ) ) | |
| Defendant. | ) ) | |

1.   I, Arnold Johnson Declare:

2.   I am currently an inmate at Centinela State Prison.

3.   I was a cousin of Arnold Adkins.

4.   Arnold Adkins died on April 8, 1997.

5.   During August or September of 1996, I had a conversation with Arnold Adkins during which he told me that he and a friend of his named Darnell Jackson had been shot at while they were at a night club sometime in 1995. During this conversation Arnold told me that they knew who had shot at them and that they, Adkins and Jackson, had handled this problem.

////

Declaration of Arnold Johnson                    Case No.

## EXHIBIT "B"

21

6.     Sometime later, I again spoke to Arnold Adkins on the subject of the persons who had shot at Adkins and Jackson, and was informed that he and Darnell had taken care of the persons who had shot at them.  When I asked what he meant by "taken care" of them, Arnold advised me that he and Darnell Jackson had shot and killed them.

7.     Shortly thereafter Arnold Adkins was shot and killed.  I attended the funeral services and while there someone pointed out Darnell Jackson to me.  I approached Darnell after the services and asked him if he thought Arnold Adkins had been killed as a result of the shootings Darnell and Arnold had been involved in earlier.  Darnell said he doubted it because everyone believed that two other guys named PeeDu and Puff had done the shooting and had been locked up for it.   Darnell told me that he and Arnold had done it right and no one saw them do it.

8.     I know that prior to July of 1995, Arnold Adkins came to my house driving a small rust colored car with tinted windows.

9.     I have no connection with DeArcey Stewart.

10.    I have no reason to swear falsely for DeArcey Stewart in this matter.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed on ___July 26ᵗʰ___, 2001, at Imperial, California.

_Arnold Johnson_
ARNOLD JOHNSON

---

Declaration of Arnold Johnson        2        Case No.

# EXHIBIT "C"

1  M. LEE HAUGEN, ESQ.
2  SBN 64186
   693 S. Magnolia Avenue
3  El Cajon, CA 92020
   (619) 442-0483
4
5  Attorney for DeArcey Stewart
6
7
8              SUPERIOR COURT OF THE STATE OF CALIFORNIA
9
10              IN AND FOR THE  COUNTY OF SAN DIEGO
11
12  The People of the State      )    CASE NO.
13  of California,               )
                                 )    DECLARATION OF TATIANNA DANIELS
14         Plaintiff,            )    IN SUPPORT OF HABEAS CORPUS
15                               )
    vs.                          )
16                               )
    DeArcey Stewart,             )
17                               )
18         Defendant.           )
                                 )
19  ———————————————————————
20       I, Tatianna Daniels, declare:
21  1.    I am a resident of San Diego County.
22  2.    I am the former girlfriend of Darnell Jackson.
23  3.    I was Darnell Jackson's girlfriend from the time I was 13 years old until I was 16
24  years old.
25  4.    I was Darnell Jackson's girlfriend during September and October of 1995.
26  ////
27  ─────────────────────────────────────────────
    Declaration of Tatianna Daniels                          Case No.
28

                        EXHIBIT "C"

5.    I learned of the shooting of Michael and Mark Parish shortly after it happened on September 23, 1995, because I lived just off of Meadowbrook Avenue at that time.

6.    A few weeks after the shooting of the Parish brothers, Darnell Jackson told me that Arnold Adkins had shot the Parish brothers and that he, Darnell Jackson had been the driver of the car.

7.    To the best of my recollection Darnell Jackson was driving a red or reddish brown 4 door Honda, and told me that it was the car used in the shooting.

8.    I have no reason to swear falsely for DeArcey Stewart in this matter.

I declare under penalty of perjury under the laws of The State of California and the United States of America that the foregoing is true and correct and that this declaration was executed at San Diego, California, on _____*MAY ,06*_____, 2002.

_____
TATIANNA DANIELS

Declaration of Tatianna Daniels                                          Case No.

# EXHIBIT "D"

1 | Jo Anne D. Roake
J. Michael Roake
2 | 2870 4th Avenue, Suite 205
San Diego, California 92103
3 | Telephone:  (619) 299-8132

4

5 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

6 | FOR THE COUNTY OF SAN DIEGO

7

8 | PEOPLE OF THE STATE OF          ) Case No.: SCD116366
9 | CALIFORNIA,                     ) Court of Appeal No. DO26580
                                    )
10 |                                ) DECLARATION OF JO ANNE D. ROAKE
             Plaintiff,             ) IN SUPPORT OF HABEAS CORPUS
11 |                                )
        vs.                         )
12 |                                )
RICHARD CHARLES LEE,                )
13 |                                )
             Defendant              )
14 | _____    )

15

16 | I, Jo Anne D. Roake, declare:

17 |     1.  I am an attorney at law duly licensed to practice in all

courts of the State of California.  I was previously appointed by

18 | the Court of Appeal to represent petitioner on direct appeal in

19 | DO26580.

20 |     2.  On July 14, 1998, I received a letter from a Deputy

21 | District Attorney pursuant to <u>Brady</u> v. <u>Maryland</u> (1963) 373 U.S.

22 | 83 [83 S.Ct. 1194, 10 L.Ed.2d 215.].  The District Attorney

23 | informed me he had received information regarding "certain

24 | unsolved cases."  He indicated that Darnell Jackson's attorney

25 | contacted him with information on petitioner's case.  According

26 | to Darnell Jackson, Dearcey Stewart and Arnold Adkins (not

27 | Petitioner), were actually the people who shot the Parish

28 | Brothers.  Jackson told his attorney the facts of how and where

DECLARATION OF JO ANNE D. ROAKE - 1

1   the Parish brothers were shot, and according to the District

2   Attorney, those statements were consistent with the police

3   reports with the exception that Petitioner (instead of Adkins)

4   was identified as one of the perpetrators.

5       3.   Either I, or someone from my office, have spoken with

6   the District Attorney on several occasions since the receipt of

7   the letter, in an attempt to speak with Mr. Darnell Jackson.

8       4.   The District Attorney informed me that Darnell Jackson

9   was going to testify for the prosecution and that after that

10  trial had concluded that Jackson might be willing to speak with

11  me regarding Petitioner's case.

12      5.   Darnell Jackson recently did testify as an informant

13  for the District Attorney's Office in another case.  (San Diego

14  Superior Court Case No. SCD137023-01.)  This case involved two

15  Skyline gang members convicted of more than 75 counts of murder,

16  robbery and assault stemming from a wave of robberies at small

17  businesses.

18      6.   After the trial, the District Attorney told the San

19  Diego Union Tribune that the jurors told him they found Jackson

20  to be credible and that other evidence in the case largely

21  supported his testimony.

22      7.   As a result of Darnell Jackson's testimony, his family

23  was relocated and his whereabouts are confidential.

24      8.   After receiving this information from the District

25  Attorney's Office regarding petitioner's case, I began to

26  investigate this newly discovered evidence.

27      9.   In addition to my efforts to speak with Darnell Jackson,

28  I have spoken with various individuals who claim they have

DECLARATION OF JO ANNE D. ROAKE - 2

1  information regarding the shooting of the Parish Brothers.  Many

2  state they have personal knowledge that Arnold Adkins was the

3  shooter, not petitioner Richard Lee.  Three of these people were

4  ultimately willing to sign a declaration as to their knowledge of

5  the incident or individuals.  These declarations are attached to

6  this writ as exhibits "B" "C" and "D."

7      I declare under penalty of perjury under the laws of the

8  State of California that the foregoing is true and correct.

9  Executed on March 7, 2000, at San Diego, California.

10

11

12  Jo Anne D. Roake

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT "E"

FILED

STEPHEN THUNBERG
Clerk of the Superior Court

AUG 3 1 2000

By: S. GROOS, Deputy

# IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF SAN DIEGO

| | | |
|---|---|---|
| IN THE MATTER OF THE APPLICATION OF: | ) | HC 16243 |
| | ) | SCD 116366 |
| | ) | |
| RICHARD CHARLES LEE, | ) | ORDER GRANTING AND ISSUING |
| | ) | PETITION FOR WRIT OF HABEAS |
| | ) | CORPUS; ORDER REMANDING |
| | ) | PETITIONER; ORDER TO PRODUCE |
| Petitioner | ) | |
| | ) | |

THIS COURT FINDS AS FOLLOWS:

On March 8, 2000, Petitioner filed a petition for writ of habeas corpus claiming he has newly discovered evidence that points to his innocence to the two charges of attempted murder (counts one and two). This court issued an Order to Show Cause on April 3, 2000.

In a return filed August 4, 2000, the People conceded that "there appears to be newly discovered evidence which is sufficiently credible to cast doubt on the integrity of the convictions in counts one and two. Therefore, the People do not oppose the petition." (People's Return, p. 3.)

Based on the above, this court orders Petitioner's two convictions for attempted murder in case SCD 116366 (counts one and two) be vacated and a new trial held. The remaining convictions in case SCD 116366 remain intact. Petitioner is remanded to Department 11 of this

-1-

1  court for further proceedings.  In that regard, he is ordered to appear in Department 11 on

2  September 28, 2000, at 2:00 p.m.

3       The Sheriff is ordered to obtain custody of the defendant, RICHARD CHARLES LEE, at

4  Salinas Valley State Prison and transport and produce defendant to the above-scheduled hearing.

5  The Department of Corrections is ordered to deliver the defendant, upon demand, into the

6  custody of the Sheriff of San Diego County.  Defendant's prison number is K-15774.

7       Service of this ORDER is ordered on (1) the San Diego District Attorney's Office (DDA

8  Thomas McArdle); (2) the San Diego County Sheriff's Office Transportation Unit; (3) the

9  Department of Corrections Legal Processing Unit; (4) Salinas Valley State Prison; (5)

10  Petitioner's attorney (J. Michael Roake); and (6) Petitioner.

11       IT IS SO ORDERED.

12

13  DATED: 3 1 Aug 00

NORBERT EHRENFREUND
JUDGE OF THE SUPERIOR COURT

-2-

| | |
|---|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO<br>☒ COUNTY COURTHOUSE, 220 W. BROADWAY, SAN DIEGO, CA 92101-3814<br>☐ FAMILY COURT, 1501 6TH AVE., SAN DIEGO, CA 92101-3296<br>☐ NORTH COUNTY DIVISION, 325 S. MELROSE DR., VISTA, CA 92083-6695<br>☐ EAST COUNTY DIVISION, 250 E. MAIN, EL CAJON, CA 92020-3941<br>☐ SOUTH COUNTY DIVISION, 500 3RD AVE., CHULA VISTA, CA 91910-5649<br>☐ JUVENILE COURT, 2851 MEADOW LARK, SAN DIEGO, CA 92123-2792 | FOR COURT USE ONLY<br><br>F I L E D<br>STEPHEN THUNBERG<br>Clerk of the Superior Court<br><br>SEP 0 5 2000<br><br>By: S. GROOS, Deputy |
| IN THE MATTER OF THE APPLICATION OF:<br>    RICHARD CHARLES LEE<br><br><br><br>                              FOR A WRIT OF HABEAS CORPUS | |
| CLERK'S CERTIFICATE OF SERVICE BY MAIL<br>(CCP 1013a(4)) | CASE NUMBER<br>HC 16243; SCD 116366 |

I, **STEPHEN THUNBERG**, certify that: I am not a party to the above-entitled case; that on the date shown below, I served the following document(s):

ORDER GRANTING AND ISSUING PETITION FOR WRIT OF HABEAS CORPUS; ORDER REMANDING PETITIONER; ORDER TO PRODUCE

on the parties shown below by placing a true copy in a separate envelope, addressed as shown below; each envelope was then sealed and, with postage thereon fully prepaid, deposited in the United States Postal Service at: ☒ San Diego ☐ Vista ☐ El Cajon ☐ Chula Vista ☐ Oceanside, California.

NAME & ADDRESS

D-422
DDA THOMAS MCARDLE
S.D. DIST. ATTY'S OFF. - APPELLATE
VIA INTEROFFEICE MAIL

O-341
S.D. COUNTY SHERIFF'S OFF. -
TRANSPORTATION UNIT
VIA INTEROFFICE MAIL

DEPARTMENT OF CORRECTIONS
LEGAL PROCESSING UNIT
P.O. BOX 942883
SACRAMENTO, CA 94283-0001

SALINAS VALLEY STATE PRISON
P.O. BOX 1020
SOLEDAD, CA 93960-1020

NAME & ADDRESS

J. MICHAEL ROAKE
ROAKE & ROAKE
2870 FOURTH AVENUE, SUITE 205
SAN DIEGO, CA 92103

RICHARD CHARLES LEE, K-15774
SVSP, FACILITY D8-201
P.O. BOX 1060
SOLEDAD, CA 93960

STEPHEN THUNBERG
CLERK OF THE SUPERIOR COURT

Date: _September 5, 2000_      by _Susan E Groos_ , Deputy
SUSAN E. GROOS

# EXHIBIT "F"

1  M. LEE HAUGEN, ESQ.
2  SBN 64186
   693 S. Magnolia Avenue
3  El Cajon, CA 92020
   (619) 442-0483
4
5  Attorney for DeArcey Stewart
6
7
8              SUPERIOR COURT OF THE STATE OF CALIFORNIA
9
               IN AND FOR THE  COUNTY OF SAN DIEGO
10
11
12  The People of the State        )    CASE NO.
    of California,                 )
13                                 )    DECLARATION OF M. LEE HAUGEN
14          Plaintiff,             )    IN SUPPORT OF HABEAS CORPUS
                                   )
15  vs.                            )
                                   )
16                                 )
    DeArcey Stewart,               )
17                                 )
18          Defendant.             )
19  _____)
20      I, M. Lee Haugen, declare:
21  1.      I am an attorney at law duly licensed to practice in the State of California.  I was
22  defense trial counsel for Petitioner, and am retained counsel for petitioner in this Habeas
23  Corpus matter..
24  2.      On or about April 20, 2001, I received a letter from a Roy Vinson, advising me that
25  he had information that petitioner had been wrongly convicted in the shooting of the Parish
26  brothers in case no. SCD 116366.   Mr. Vinson advised me that Darnell Jackson was the
27
28  _____
    Declaration of M. Lee Haugen                          Case No.

1  driver of the vehicle from which Arnold Adkins had shot the Parish brothers. Mr. Vinson

2  further advised me that on or about September 23, 1995, Darnell Jackson was in possession

3  of a .357 magnum revolver which had been involved in a shooting and was trying to sell it

4  to Mr. Vinson.

5  3.       On or about June 10, 2001, I was contacted by Arnold Johnson who advised me

6  that he was the cousin of Arnold Adkins, previously identified by Darnell Jackson as the

7  person who actually shot the Parish brothers. (See Habeas Corpus HC 16243.) Arnold

8  Johnson informed me that at the funeral of Arnold Adkins, Darnell Jackson admitted to being

9  the driver of the vehicle used in the shooting of the Parish brothers. Mr. Johnson further

10  informed me that Arnold Adkins had also informed him of that fact in late 1996. (See

11  declaration of Arnold Johnson.) I was also informed by Mr. Johnson that in 1995 he had

12  seen Darnell Jackson driving a rust colored Honda four door vehicle with tinted windows.

13  4.       This description of this car matches the description given by the Parish brothers

14  shortly after the shooting of September 23, 1995, as well as the description of a vehicle used

15  in another drive-by shooting involving Michael Parish on December 2, 1995, while petitioner

16  was in custody awaiting trial.   I have not attempted to contact Darnell Jackson, who has

17  been granted protected witness status by the San Diego County District Attorney's Office,

18  because it is unlikely that Darnell Jackson would confirm the foregoing information.

19  4.       Shortly after obtaining the declaration of Arnold Johnson, I was informed of a former

20  girlfriend of Darnell Jackson, one Tatianna Daniels who had made statements to others that

21  Darnell Jackson had personally confessed to his involvement in the shooting of the Parish

22  brothers.

23       I spent many months attempting to get in contact with "Tatianna", known to me only

24  by that name.

25                                                -2-

26

27

28  Declaration of M. Lee Haugen                                    Case No.

1        Eventually, in early May, 2002, I was given a telephone number for Tatianna Daniels.

2    I immediately telephoned Ms. Daniels who confirmed what I had heard, and agreed to sign

3    an declaration to that effect.

4    5.    The declaration of Roy Vinson, Arnold Johnson and Tatianna Daniels are attached

5           to this writ as Exhibits "A", "B". And"C".

6        I declare under penalty of perjury under the laws of The State of California and the

7    United States of America that the foregoing is true and correct and that this declaration was

8    executed at El Cajon, California, on _MAY 10_____, 2002.

9

10

11

12

13    M. LEE HAUGEN,

14    Attorney for Defendant, DeArcey J. Stewart

15

16

17

18

19

20

21

22

23

24

25

26

27    -3-

28    Declaration of M. Lee Haugen          Case No.

# EXHIBIT "G"

SAN DIEGO POLICE DEPARTMENT
INVESTIGATOR'S REPORT

DATE (OCCURR.):        September 23, 1995

TIME (OCCURR.):        1840 Hours

LOCATION (OCCURR.):    700 block of Meadowbrook Drive, San Diego, CA

SUBJECT:               245(a)(2) PC ADW (Gun)
                       Reference SDPD CASE # 95-069996

---

VICTIM:        PARISH, Michael Wayne
               B/M/A, DOB: ▓▓▓▓▓▓▓▓▓

               Home Phone: ▓▓▓▓▓▓▓▓
               Employer: ▓▓▓▓▓▓▓▓▓▓

               Work Phone: ▓▓▓▓▓▓▓

DETECTIVE STATEMENT:

On September 23, 1995, at about 1840 hours, Mark and Michael PARISH
were shot by two East Side Piru gang members.  Michael PARISH only
knew them by their street names of "P-Dew" and either "Puff" or
"Puffero".  Michael PARISH told me that "P-Dew" was driving the car
and that "Puff" or "Puffero" was the one who actually shot him and
Mark PARISH.  Michael PARISH gave me the street names on September
26, 1995.

I went to the Gang files and found that "P-Dew's" real name was
Dearcey STEWART.  I obtained a photograph of STEWART from his file
and put together a photo line-up.  I obtained a photo of "Puffero",
who's real name is Richard LEE, from an arrest on September 26,
1995, in which he was a suspect in a 245(a)(2) PC.  I put together
a photo line-up of LEE also.

I obtained a photo of STEWART's car, which was a BMW 325, silverish
gray in color, from Homicide, for a line-up also.

On October 2, 1995, I went to see Michael PARISH to show him the
photo line-up of possible suspects.

Prior to showing Michael PARISH the photo line-up, I gave him the
following admonishment.  I told PARISH that he would be viewing
several photographs of similar appearing individuals.  I told
PARISH that he was under no obligation to identify anyone in the
photo line-up.  I also told PARISH that the suspect in this
particular case may or may not be among the photographs shown to
him.

I gave PARISH the first set of photographs and while he was going
through the photos, he handed me the picture of Dearcey STEWART and
said, "That's him, he was driving.  That's "P-Dew", only his hair
was not that short.  He had his hair pulled back, so it looked like
it was short, but it was actually long.  It may have been in a
ponytail slicked back to his head.  "P-Dew" was the one who was

San Diego Police D   .rtment
Investigator's Report
CASE # 95-069996
S. WADE, ID 3506
Page 2

driving the car."

I gave PARISH the second set of photographs.  As he was going
through them, He handed me the picture of Richard LEE.  PARISH told
me, "That's Puffero, or Lil Puff.  He was the one who was shooting
at us."

I then showed PARISH two photos of a BMW 325.  PARISH gave me the
photo of Dearcey STEWART's car and said, "Yes, this was the car
that they were in.  This is his car or his girlfriend's car.  This
is the car that he was driving.  It's got the Enke rims and
everything.  Tinted window on the back and the "kit" in the front."

I asked PARISH how did he find out the street names of the two
individuals.  Michael PARISH told me that he received numerous
phone calls giving him this information. ← still in hospital?

I asked Michael PARISH if he had anything further to tell me.
Michael PARISH told me no.

At this point I concluded my interview with Michael PARISH.

Reporting Officer S//WADE ID # 3506 Division SGU          SW/pvz

Approved by _____ Date of this report 10/9/95 Time 1300 hrs

# EXHIBIT "H"

F I L E D
Clerk of the Superior Court

DEC 1 7 2002

By: J. KRANER, Deputy

THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
IN AND FOR THE COUNTY OF SAN DIEGO

IN THE MATTER OF THE APPLICATION OF:   )   HC 17038
                                         )   SCD 116366
                                         )
                                         )   ORDER DENYING PETITION FOR WRIT
DEARCEY JAMUL STEWART,                   )   OF HABEAS CORPUS
                                         )
                                         )
            Petitioner.                  )
                                         )
_____ )

AFTER REVIEWING THE PETITION FOR WRIT OF HABEAS CORPUS, THE
RETURN, DENIAL AND THE COURT FILE IN THE ABOVE REFERENCED MATTER,
THE COURT FINDS AS FOLLOWS:

Petitioner and co-defendant, Richard Charles Lee, were convicted in 1996 by a jury of
deliberate, premeditated attempted murder of brothers Mark and Michael Parish (Penal Code §§
664/187/189). The jury also found that Petitioner was armed with a firearm in the commission
of the offenses (Penal Code § 12022(a)(1)). In a bifurcated court trial, the court found that
Petitioner had been previously convicted of a serious felony (Penal Code § 667(a)). Petitioner
was sentenced on July 18, 1996, to serve two consecutive life terms with the possibility of
parole, plus an additional seven years.

In 2000, in a petition for writ of habeas corpus largely based on new evidence proffered
by one Darnell Jackson, co-defendant Lee's convictions for the attempted murders were
overturned. The evidence showed that the now deceased Arnold Adkins was the shooter and

-1-

Petitioner was the driver of the vehicle from which the shooting occurred.

In a petition for writ of habeas corpus filed on May 14, 2002, Petitioner asserted that newly discovered evidence conclusively establishes his innocence in connection with the guilty verdict rendered on April 12, 1996. More specifically, Petitioner contends that Darnell Jackson and not he, was the driver of the vehicle from which the shots were fired. The petition is based on declarations signed by Roy Vinson, Arnold Johnson and Tatiana Daniel.

On June 11, 2002, this court issued an order to show cause ("OSC") why the relief sought in the petition should not be granted. Respondent People of the State of California filed a return to the OSC on October 4, 2002, and Petitioner filed a traverse (denial) to the return on December 5, 2002.

## I. Petitioner's Burden in Seeking Habeas Relief

The California Supreme Court reiterated the burden on a habeas petitioner as follows:

> Because a petition for a writ of habeas corpus seeks to collaterally attack a presumptively final criminal judgment, the petitioner bears a heavy burden initially to *plead* sufficient grounds for relief, and then later to *prove* them. "For purposes of collateral attack, all presumptions favor the truth, accuracy, and fairness of the conviction and sentence; *defendant* thus must undertake the burden of overturning them. Society's interest in the finality of criminal proceedings so demands, and due process is not thereby offended." (Citation) (*People v. Duvall* (1995) 9 Cal. 4th 464, 474 (italics in original).)

## II. The Standard for "Newly Discovered Evidence"

In *In re Weber* (1974) 11 Cal. 3d 703, the California Supreme Court held that newly discovered evidence does not warrant relief unless it is of such character as will completely undermine the entire structure of the case on which the prosecution was based; i.e., "unless (1) the new evidence is conclusive, and (2) it points unerringly to innocence." (*Id.* at 724.) However, "newly discovered evidence is a basis for relief only if it undermines the prosecution's entire case. It is not sufficient that the evidence might have weakened the prosecution case or presented a more difficult question for the judge or jury." (Citations) (*In re Clark* (1993) 5 Cal. 4th 750, 766.) The newly discovered evidence must cast "fundamental doubt on the accuracy and reliability of the proceedings. At the guilt phase, such evidence, if credited, must undermine

the entire prosecution case and point unerringly to innocence or reduced culpability." (*Ibid.*, citing *People v. Gonzalez* (1990) 51 Cal. 3d 1179, 1246.) "'The high standard for newly discovered evidence claims presupposes that all the essential elements of a presumptively accurate and fair proceeding were in the proceeding whose result is challenged. (Citation).'" (*Ibid.*, quoting *Strickland v. Washington* (1984) 466 U.S. 668, 694.) It is on this basis that the claim of newly discovered evidence as a ground in support of a motion for a new trial is uniformly "looked upon with disfavor." (*People v. Greenwood* (1957) 47 Cal. 2d 819, 821.)

### III. The "New" Evidence Does Not Completely Undermine the Prosecution's Case

The "newly discovered" evidence presented herein is clearly insufficient to support a conclusion that points unerringly to Petitioner's innocence. In short, the evidence is not credible because of inherent inaccuracies and witness bias. Moreover, it does not completely undermine the prosecution's case or point unerringly to Petitioner's innocence, and the evidence includes inadmissible hearsay.

### A. Declaration of Roy Vinson

Mr. Vinson declared that he has been in custody since September 26, 1995. He states that a few days prior to being arrested Arnold Adkins and Darnell Jackson came to the home on Gribble Street at which Mr. Vinson was living. They arrived in a rust colored Honda. Jackson was in possession of a stolen .357 caliber revolver that he said was used in a shooting and he was trying to get rid of it. Mr. Vinson said that he did not want the gun in his home and Jackson left taking the gun with him. Mr. Vinson further stated that Adkins told him he had shot two men and that the person with him during the shooting was one of his "homies." Mr. Vinson knew that Darnell Jackson was a good friend of Adkins and they spent a great deal of time together. Mr. Vinson concludes that he has no connection with Petitioner and that he has no reason to testify falsely for Petitioner in this matter. (Roy Vinson decl., dated May 6, 2001.)

However, the evidence presented in connection with the People's return shows that Mr. Vinson has suffered five felony convictions involving moral turpitude and he is presently serving a three-strikes prison sentence of 25 years to life in connection with a vehicle theft for which he was arrested on September 25, 1995. (People's Ex. 2.) More importantly, Mr. Vinson has

-3-

offered three different accounts of the statements he attributes to Arnold Adkins. (People's Exs. 5, 6, 7.) Further, during an interview conducted by the District Attorney's ("D.A.'s") Office, Mr. Vinson was unsure of the name or model of the vehicle Darnell Jackson and Arnold Adkins arrived in, he was not sure of the caliber of gun he saw, nor was he sure of any statements Adkins made regarding the gun. (People's Ex. 8, pages 9-14, 40-41.) Mr. Vinson also referred the People's counsel to his sister, Lanette Vinson, who resided at the Gribble Street residence during the entire time and about whom he stated, "[s]he's not gonna lie...." (*Id.*, page 32.)

Lanette Vinson was interviewed by the D.A.'s Office on August 14, 2002. She stated that Roy Vinson was not at the residence on September 23 or 24, 1995, before he was taken into custody on September 25, 1995. (People's Ex. 9, pages 7-8, 12-13, 35-40, 44.) Ms. Vinson further declared that she has a close connection with Petitioner and his family, and that she planned to carpool with Petitioner's mother on a visit to the prison where Petitioner and Roy Vinson are housed. (*Id.*, pages 7, 17, 23, 34.)

In contrast to Mr. Vinson's statement that he has no connection with Petitioner, he has been a member of the Skyline Piru gang to which Petitioner and co-defendant Lee belonged. (People's Ex. 6, pages 3-4.) Mr. Vinson also admitted in his interview with the D.A.'s Office that he had significant contact with Petitioner's mother. (People's Ex. 8, pages 15, 17-19.) Moreover, Petitioner and Mr. Vinson were housed in the same facility and yard at Salinas Valley State Prison for 11 months in 2001, and they were assigned cells 226 and 234 on the same floor for almost ten of these months. (People's Exs. 4, 11.)

There is also some question whether the statements purportedly made to Mr. Vinson by Arnold Adkins would be admissible as an exception to the hearsay rule under Evidence Code § 1230, because they involve statements that are not specifically disserving to Mr. Adkins alone (i.e., they also implicate another, which is impliedly Darnell Jackson). (*People v. Duarte* (2000) 24 Cal. 4th 603, 612; *People v. Leach* (1975) 15 Cal. 3d 419, 441.)

Finally, the statement allegedly made by Darnell Jackson to Mr. Vinson does not involve a confession to a crime or a statement Jackson knew could result in a conviction, thereby making it inadmissible as a declaration against interest. (Evidence Code § 1230; *People v. Sanders*

1   (1990) 221 Cal. App. 3d 350, 379.)

2        Therefore, the court rejects the contents of the Roy Vinson declaration based on the

3   People's showing that it lacks credibility, it includes inadmissible hearsay, and it does not

4   completely undermine the prosecution's case or point unerringly to Petitioner's innocence.

5        *B. Declaration of Arnold Johnson*

6        Arnold Johnson declared that he is currently an inmate at Centinela State Prison, and was

7   a cousin of the late Arnold Adkins, who passed away on April 8, 1997. In August or September

8   of 1996, Adkins told Johnson that he and his friend Darnell Jackson had been shot at while they

9   were at a nightclub in 1995. Adkins said he knew who had shot at them and he and Jackson had

10  handled or taken care of the problem. Johnson later asked Adkins what he meant by taking care

11  of the problem, and Adkins told him he and Jackson had shot and killed them. Shortly thereafter,

12  Adkins was shot and killed, and Johnson attended the funeral. Johnson approached Darnell

13  Jackson at the funeral and asked him if he thought that Adkins was killed because of the

14  shootings he and Jackson had done. Jackson said he doubted it because two other guys named

15  "Pee-Du" and "Puff" were in custody and everyone believed they did it. Jackson added that he

16  and Adkins had done it and that no one saw them do it. Lastly, Johnson declared that he had no

17  connection to Petitioner and there was no reason for him to testify falsely on behalf of Petitioner.

18  (Arnold Johnson decl., dated July 26, 2001.)

19       The People have presented evidence showing that Arnold Johnson has been convicted of

20  four felonies involving moral turpitude, and he is presently serving a prison sentence of 25 years

21  to life for a three-strikes drug case. (People's Exs. 13, 14.) Although Johnson stated that he has

22  no connection with Petitioner, the People have presented evidence showing that Johnson, Roy

23  Vinson and Petitioner's co-defendant, Richard Lee, were assigned to the same facility and yard

24  at Salinas Valley State Prison for almost ten months in 1998 and 1999. (People's Exs. 4, 10, 12.)

25  Johnson, Mr. Vinson and Lee were also assigned to the same yard in 2000. Petitioner and Lee

26  were later assigned to the same cell from December 2, 2000 to January 11, 2001. (People's Exs.

27  10, 11.) On January 11, 2001, Petitioner was then transferred to the same facility and yard where

28  Mr. Vinson and Johnson had been assigned since September 28, 2000. (People's Exs. 4, 11, 12.)

These three remained assigned to the same yard until March 1, 2001, when Johnson was transferred to Centinela State Prison. On May 8, 2001, Lee was also transferred to Centinela and assigned to the same yard for several months. (People's Exs. 10, 12.)

Johnson also admitted in his interview with the D.A.'s Office that he has a close association with Petitioner's co-defendant, Lee, and that Johnson "give[s] him all the respect of the world." (People's Ex. 15, pages 32-34, 37.) Johnson stated that he was doing a favor for Lee by helping Petitioner. (*Id.*, pages 32-34.) Johnson also admitted lying during the interview about whether he could identify pictures of Jackson, Lee, Petitioner and Ms. Daniels, later stating, "man, I can't give you all the goods." (People's Ex. 15, pp. 40-43.)

The statements purportedly made by Adkins to Johnson are also inherently unreliable in that they refer to the killing and death of the two victims who survived. Furthermore, the purported conversation between Johnson and Jackson that occurred at Adkins' funeral is not worthy of belief because the memorial service was on April 15, 1997 and Jackson had been in custody in county jail from April 8, 1997 until he was transferred to state prison on May 15, 1997. This information is confirmed both by statements of Lanette Vinson (People's Ex. 9) and by documentary evidence (People's Exs. 17, 18).

Lastly, the statements purportedly made by Arnold Adkins to Mr. Johnson may be inadmissible hearsay because they involve statements that are not specifically disserving to Mr. Adkins alone (i.e., they also implicate another, Darnell Jackson). (Evidence Code § 1230; *People v. Duarte* (2000) 24 Cal. 4th 603, 612; *People v. Leach* (1975) 15 Cal. 3d 419, 441.)

In sum, the declaration of Arnold Johnson is without merit because of inherent inconsistencies and lack of credibility, the fact that it contains statements that are likely hearsay, and because it fails to completely undermine the prosecution's case or point unerringly to Petitioner's innocence.

### C. *Declaration of Tatiana Daniel*

Tatiana Daniel declared that she was Jackson's girlfriend from the time she was ages 13 to 16, which included the period of September 1995 to October 1995. She learned of the shooting of the Parish brothers shortly afterwards because of her proximity to the location of its

occurrence. A few weeks after the shooting, Jackson told her that Adkins had shot the Parish brothers and that Jackson was the driver of the car. Jackson drove a reddish-brown or red four-door Honda at that time, and Jackson said that was the car used in the shooting. Ms. Daniel declared that she had no reason to swear falsely on Petitioner's behalf. (Tatiana Daniel decl., dated May 6, 2002.)

When Ms. Daniel was interviewed by the D.A.'s Office, she acknowledged associating with the Skyline Piru gang while she was involved with Jackson, and in particular, associating daily with and living within a block of Arnold Adkins and his family, as well as Petitioner and his family. She also stated that she remains friends with the Adkins family. (People's Ex. 22, pages 7-9, 11-12, 18, 48.) Ms. Daniel also said during the interview that she had never spoken to anyone about Jackson's purported confession until she spoke to Petitioner's present counsel, Mr. Haugen. However, Mr. Haugen has declared that shortly after obtaining the Arnold Johnson declaration on July 26, 2001, he was told that Ms. Daniel had made statements to others that Jackson had personally confessed to his involvement in the shooting of the Parish brothers. Mr. Haugen spent many months attempting to get in contact with Ms. Daniel, only obtaining her declaration on May 10, 2002, more than nine months after he first had heard of Ms. Daniel's statements, and only four days before the instant petition was filed with this court. (M. Lee Haugen decl., dated May 10, 2002.) Thus, obviously, Mr. Haugen knew the testimony of Ms. Daniel would lend support to the instant petition.

Ms. Daniel also stated eight distinct times during the interview with the D.A.'s Office that she spoke to and saw Darnell Jackson on April 15, 1997, at the funeral for Arnold Adkins. (People's Ex. 22, pages 25, 26, 28, 40, 41, 53.) However, the evidence referenced above clearly shows that Darnell Jackson was in county jail at the time of the funeral. Despite this obvious inaccuracy, Ms. Daniel correctly related many other details of the Adkins' funeral and reception. (Id., pages 25-26.)

In short, the statements of Ms. Daniel lack credibility because of the glaring inaccuracies in her declaration and interview statements in comparison to the documentary evidence and statements of others as pointed out by the People in connection with their return.

*IV. The Petition Is Properly Denied Without An Evidentiary Hearing*

Rule 4.551(f) of the California Rules of Court states in pertinent part:

> An evidentiary hearing is required if, after considering the verified petition, the return, any denial, any affidavits or declarations under penalty of perjury, and matters of which judicial notice may be taken, the court finds there is a reasonable likelihood that the petition may be entitled to relief and the petitioner's entitlement to relief depends on the resolution of an issue of fact.

Further, in *People v. Romero* (1994) 8 Cal. 4th 728, the California Supreme Court set out the habeas review process as follows:

> Once the issues have been joined [by the filing of the return and traverse (or denial)], the court must determine whether an evidentiary hearing is needed. If the written return admits allegations in the petition that, if true, justify the relief sought, the court may grant relief without an evidentiary hearing. (Citations.) Conversely, *consideration of the written return and matters of record may persuade the court that the contentions advanced in the petition lack merit, in which event the court may deny the petition without an evidentiary hearing.* (Citations.) Finally, if the return and traverse reveal that petitioner's entitlement to relief hinges on the resolution of factual disputes, then the court should order an evidentiary hearing. (Citation.) (*Id.* at 739-40 (emphasis added).)

The petition on its face persuaded the court to make a preliminary determination that Petitioner would be entitled to the relief requested if his factual allegations were proved. (Cal. Rules of Court, rule 4.551(c)(1).) However, consideration of the evidence proffered in the People's return has convinced this court that the petition is without merit, is based on contrived or at least inaccurate evidence, and is supported by declarations from persons with biases towards Petitioner and his co-defendant. Furthermore, the evidence presented generally fails to undermine the prosecution's entire case, is not conclusive in any respect, and fails to point unerringly to Petitioner's innocence or reduced culpability.

///

///

///

///

///

-8-

Therefore, Pursuant to rule 4.551(f) of the California Rules of Court and for the reasons set forth herein, the petition is hereby denied in its entirety without an evidentiary hearing because "consideration of the written return (and denial) and matters of record...persuade the court that the contentions advanced in the petition lack merit...." (*Romero, supra,* 8 Cal. 4th at 739.)

The petition is therefore DENIED in its entirety for the reasons stated herein.

It is further ordered that a copy of this Order be served upon: (1) the Office of the San Diego County District Attorney (DDA Genaro C. Ramirez); and (2) Petitioner's counsel, M. Lee Haugen.

IT IS SO ORDERED.

DATED: __12/16/02__

_____
WILLIAM H. KENNEDY
JUDGE OF THE SUPERIOR COURT

I hereby certify that the foregoing instrument is a full, true and correct copy of the original on file in this office; that said document has not been revoked, and the same is outstanding and it is in full force and effect.

Attest ____DEC 1 7 2002____
Clerk of the Superior Court of the State
California, in and for the County of San Diego

By _____ Deputy

# EXHIBIT "I"

SAN DIEGO REGIONAL
OFFICER'S REPORT
NARRATIVE

☐ OFFICER'S REPORT ONLY

CONTINUED: ☐ ARR./JUV.CON.
ROM ☑ CRIME
☐ OTHER _____

| | PAGE | | CASE NUMBER |
|---|---|---|---|
| | 13 OF 18 | | 95-087241 |

| CODE SECTION AND DESCRIPTION (ONE INCIDENT ONLY) | MONTH | DAY | YEAR | DAY OF WEEK | TIME |
|---|---|---|---|---|---|

| LOCATION OF INCIDENT (OR ADDRESS) | CITY | BEAT | DISTRICT |
|---|---|---|---|

| PERSON(S) INVOLVED: VICTIM | SUSPECT (IF NAMED) | PROPERTY TAG NO. (S) |
|---|---|---|

STATEMENT OF STEVEN DOYLE SHELTON (WITNESS)

SHELTON TOLD ME ESSENTIALLY AS FOLLOWS:

I WAS ON MY WAY TO MY MOTHER'S HOUSE ON
KELTON. I SAW SOME OF MY FRIENDS
STANDING IN FRONT OF THEIR HOUSE (1054 PYRAMID ST)
I HAD ONLY BEEN THERE FOR ABOUT 5 MINUTES
I WAS STANDING IN THE DRIVEWAY TALKING
WHEN I NOTICED EVERYONE LOOKING TOWARDS
THE STREET. I SAW A GREY OR BEIGE DARK
COLORED CAR LIKE A 79 HONDA ACCORD OR CIVIC
DRIVING SLOW. IT LOOKED LIKE THE PASSENGER
WAS POINTING OR SOMETHING. I HEARD A
"CLICK" "CLICK" SO I HIT THE GROUND. THEN
I HEARD ABOUT 5 SHOTS THAT SOUNDED
LIKE A .22 OR .25 CALIBER. I COULDN'T
SEE WHAT THE PASSENGER LOOKED LIKE. ALL
I COULD SEE WAS HIS ARM HAD A LONG
SLEEVE THAT WAS BLACK. I DIDN'T SEE THE
DRIVER. IT LOOKED LIKE MAYBE THERE WAS
SOMEONE IN THE BACK SEAT. I SCRAMBLED AROUND
TO INFRONT OF THE CAR PARKED IN THE DRIVEWAY
JUST INCASE THEY BACKED UP TO SHOOT SOME MORE

266

| REPORTING OFFICER | I.D. # | DIVISION | APPROVED BY: | DATE OF REPORT: | MONTH | DAY | YEAR | TIME |
|---|---|---|---|---|---|---|---|---|
| M. HALEY | 5713 | SE2 | D. SHOCKLEY 2490 | | 12 | 02 | 95 | 2055 |

115-9 (REV. 3-84)

CONTINUED

# EXHIBIT "J"

COURT OF APPEAL - FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

F I L E D
Stephan M. Kelly, Clerk

MAY 2 3 2003

Court of Appeal Fourth District

| | |
|---|---|
| In re DEARCEY JAMUL STEWART | D041599 |
| on | (San Diego County |
| Habeas Corpus. | Super. Ct. No. SCD 116366) |

THE COURT:

The petition for writ of habeas corpus has been read and considered by Justices

Huffman, Nares and O'Rourke.  We have taken judicial notice of direct appeal D026580

and superior court file HC17038.

Dearcey Stewart is serving a sentence of two consecutive life terms plus seven

years for his conviction of two counts of deliberate, premeditated attempted murder of

Mark and Michael Parish.  We affirmed the conviction of Stewart and his co-defendant

Richard Lee on December 17, 1998.

In 2000 Lee obtained habeas relief from superior court based on newly discovered

evidence from a Darnell Jackson that Arnold Adkins (who died in 1997) was the shooter.

Jackson, however, maintained that Stewart was the driver of the car.

Stewart sought habeas relief from superior court in 2002 based on newly

discovered evidence -- the declarations of Roy Vinson, Arnold Johnson and Tatianna

Daniels purporting to establish Jackson was the driver. The superior court issued an order to show cause but, after reviewing the return and traverse, denied the petition on grounds that the new evidence failed to undermine the prosecution's case completely.

In this petition, Stewart argues his conviction should be overturned because the newly discovered evidence -- the Vinson, Johnson and Daniels declarations -- undermines the People's entire case. Briefly, the declarations provide as follows.

Vinson declared that his nephew Adkins stated he shot two men, men Vinson now knows to be the Parish brothers. Vinson added although Adkins did not identify the person with him at the time of the shooting except as one of his "homies," Jackson was one of Adkins' good friends and, around the time the Parishes were shot, Jackson had been trying to get rid of a revolver he said had been used in a shooting.

In his declaration, Johnson stated his cousin Adkins told him he and Jackson shot and killed two men who had previously fired at them at a nightclub. Johnson added, when he approached Jackson at Adkins's funeral in 1997, Jackson expressed doubt that there was any relationship between Adkins's death and the earlier shooting because two other men named "Pee-Du" and "Puff" were in custody, everyone believed the men in custody had "done it" and, while Jackson and Adkins committed the crime, no one saw them.

Jackson's girlfriend Daniels declared that a few weeks after the shooting Jackson admitted to her Adkins was the shooter and Jackson was the driver.

Vinson and Johnson also declared that they have no connection to Stewart. All three declarants professed to have no reason to swear falsely for Stewart.

2

"[N]ewly discovered evidence does not warrant [habeas] relief . . . unless (1) the new evidence is conclusive, and (2) it points unerringly to innocence." (*In re Weber* (1974) 11 Cal.3d 703, 724.) "[I]t is not sufficient that the new evidence conflicts with that presented at the trial and would have presented a more difficult question for the trier of fact." (*In re Wright* (1978) 78 Cal.App.3d 788, 802.)

The Vinson declaration is neither conclusive nor does it point unerringly to innocence. Vinson does not say Adkins identified Jackson as the driver of the car or Jackson admitted to driving the car. The statements Vinson attributes to Adkins are inadmissible hearsay to the extent they implicate another person and the statements he ascribes to Jackson are inadmissible because Jackson does not confess to a crime or admit an act he knew could result in a conviction. Finally, as pointed out in the return filed by the People below, Vinson has a history of convictions for crimes of moral turpitude, he has offered several different accounts of the statements attributed to Adkins and, contrary to his declaration, Vinson and his family have a relationship with Stewart and his family.

The declarations of Johnson and Daniels suffer from many of the same problems as the Vinson declaration. The Johnson declaration starts off with one glaring inaccuracy: it attributes a confession of murder to Adkins when in fact the Parish brothers were not killed. Apart from that, as the People pointed out below, Johnson's declaration is problematic because Johnson could not have attended the funeral service (Johnson was in custody at the time), problems with admissibility, Johnson's history of convictions for crimes of moral turpitude, Johnson's admissions in interviews with the prosecutor and Johnson's assignment to the same facility, yard and cell with Stewart, Vinson and Lee in

3

prison.  Daniels's interview with the prosecutor revealed a very close association with

Adkins and his family and numerous inconsistencies in her story.

     The declarations at best raise an issue of credibility without providing a complete

defense.  The petition is denied.

                                                         HUFFMAN, Acting P. J.

Copies to:  All parties

# EXHIBIT "K"

1  M. LEE HAUGEN, ESQ.
2  SBN 64186
   693 S. Magnolia Avenue
3  El Cajon, CA 92020
   (619) 442-0483
4
5  Attorney for DeArcey Stewart
6
7
8        SUPERIOR COURT OF THE STATE OF CALIFORNIA
9
          IN AND FOR THE COUNTY OF SAN DIEGO
10
11
12  In the Matter of The Application of    )    CASE NO. HC 17038
                                           )    SCD 116366
13  DeArcey Jamul Stewart,                 )
                                           )
14                                         )    TRAVERSE TO RETURN ON
           Petitioner,                     )    PETITION FOR WRIT OF
15                                         )    HABEAS CORPUS
                                           )
16  for Writ of Habeas Corpus.            .)
17  ───────────────────────────────────────)
18        M. Lee Haugen, attorney for Petitioner DeArcey Stewart, hereby responds by
19  Traverse to Return on Petitioner's Petition For Writ of Habeas Corpus. And alleges as
20  follows:
21                                    I
22        Petitioner denies that he is in lawful custody of the Department of Corrections in
23  Case No. CSD 116366, and so denies on the grounds previously set forth in the Petition for
24  Writ of Habeas Corpus, HC 17038. Petitioner alleges that credible evidence exists to
25  establish that Darnell Brooks Jackson and not Petitioner DeArcey Stewart committed the
26  acts of attempted murder upon Michael and Mark Parish on September 23, 1995.
27
28  ─────────────────────────────────────────────────────────
    Declaration of M. Lee Haugen              Case No. HC 17038

## II

Petitioner requests the Court to take judicial notice of its own file herein, most particularly the trial court transcripts as presented on appeal.

## III

Petitioner does not contest the allegations in Respondent's Return, paragraph III on page two (2).

## IV

Petitioner contests Respondent's denial of Petitioner's statement of facts in Petition for Writ of Habeas Corpus and re-alleges the same at this point as though fully set forth.

## V

Petitioner contests Respondent's allegations as set forth in paragraph V, page two (2) of Respondent's Return. Petitioner alleges that hearsay statements in the form of admissions by Darnell Brooks Jackson were made, establishing his complicity in the crimes for which Petitioner was convicted, and that such admissions would be admissible at trial. Petitioner contends that criminal history and bias do not automatically render incredible, a witnesses testimony. Moreover, credibility of witnesses should be allowed to be judged by a jury trying all of the facts. Three (3) witnesses have provided information that supports the connection that Darnell Brooks Jackson was not only involved in the crime, by his own admission, but was also seen in possession of a pistol of the type used in shooting the Parish brothers, but was also in possession, at the time of the shooting, a car matching the initial description of the assailant vehicle. Furthermore, the car used by Darnell Jackson matched the description of the car used in a shooting at a party, where Michael Parish was standing in the front yard, in December, 1995, while petitioner was in custody.

## VI

Petitioner requests the Court order a hearing at which witnesses may be called to testify as to their knowledge of the facts alleged in the Petition for Writ of Habeas Corpus.

-2-

Declaration of M. Lee Haugen                    Case No.HC 17038

1      Respondent asserts as reasons to summarily deny Petitioner's Writ, the fact that the

2 District Attorney's Office has established inconsistencies in statements of Roy Vinson,

3 Arnold Johnson and Tatiana Daniel.

4      The statements of these witnesses were obtained more than five (5) years after the

5 events they sought to relate.

6      Roy Vinson was addicted to hard drugs during 1995, and may not have a crystal clear

7 recollection of events.

8      Arnold Johnson was interviewed in prison by the District Attorney's Office and in

9 street jargon explained to Mr. Ramirez that he couldn't give "all the goods," when explaining

10 why he was not candid during a photo identification session. Arnold Johnson was mistaken

11 as to when Darnell Jackson made admissions to him, but he was not unclear as to what was

12 said by Darnell Jackson.

13      Tatiana Daniel related to the District Attorney's Office that she had seen Darnell

14 Jackson the last time at a funeral which took place when Jackson was in custody, and Mr.

15 Ramirez argues that her statement was therefore false. One must consider that young black

16 people die more frequently than young whites due to gang violence, and Ms. Daniels may

17 have seen Darnell Jackson at another person's funeral. There was no demonstrated bias in

18 Ms. Daniel's statements.

19                        **VII**

20      For the foregoing reasons Petitioner prays the Court order a hearing on the Petition

21 for Writ of Habeas Corpus.

22 Dated: _December 4_ , 2002         Respectfully Submitted

23

24

25                                M. LEE HAUGEN,

26                                Attorney for Petitioner

27                             -3-

28 Declaration of M. Lee Haugen            Case No.HC 17038

# VERIFICATION

## STATE OF CALIFORNIA
## COUNTY OF IMPERIAL

( C.C.P. SEC. 446 & 2015.5; 28 U.S.C. SEC. 1746 )

I, _DE'ARcey Stewart_ DECLARE UNDER THE PENALTY OF PERJURY
THAT : I AM THE _PETiTioNER_ IN THE ABOVE ENTITLED ACTION;
I HAVE READ THE FOREGOING DOCUMENTS AND KNOW THE CONTENTS THEREOF AND THE SAME IS
TRUE OF MY OWN KNOWLEDGE , EXCEPT AS TO MATTERS STATED THEREIN UPON INFORMATION, AND
BELIEF, AND AS TO THOSE MATTERS , I BELIEVE THEM TO BE TRUE.

EXECUTED THIS _15_ DAY OF _MAY_ ; AT CALIPATRIA
STATE PRISON, CALIPATRIA, CALIFORNIA 92233-5002

(SIGNATURE) _De'Arcey Stewart_
(DECLARANT/PRISONER)

---

## _PROOF OF SERVICE BY MAIL_

### (C.C.P. SEC. 1013 (a) & 2015.5; 28 U.S.C. SEC. 1746 )

I, _DE'ARcey Stewart_ , AM A RESIDENT OF CALIPATRIA STATE PRISON, IN THE COUNTY
OF IMPERIAL, STATE OF CALIFORNIA; I AM OVER THE AGE OF EIGHTEEN (18) YEARS OF AGE AND AM/AM
NOT A PARTY OF THE ABOVE-ENTITLED ACTION. MY STATE PRISON ADDRESS IS: P.O. BOX 5002,
CALIPATRIA, CALIFORNIA 92233-5002

ON _MAY 15, 05_ I SERVED THE FOREGOING:
_Petition for Writ of Habeas Corpus (2 copies)_

### (SET FORTH EXACT TITLE OF DOCUMENT/S SERVED)
ON THE PARTY(S) HEREIN BY PLACING A TRUE COPY(S) THEREOF, ENCLOSED IN A SEALED ENVELOPE
(S), WITH POSTAGE THEREON FULLY PAID, IN THE UNITED STATES MAIL, IN A DEPOSIT BOX SO
PROVIDED AT CALIPATRIA STATE PRISON, CALIPATRIA, CALIFORNIA 92233-5002

United States District Court
Southern District of California
880 Front Street #RM 4290
San Diego, CA 92101 - 8900

THERE IS DELIVERY SERVICE BY UNITED STATES MAIL AT THE PLACE SO ADDRESSED, AND THERE IS
REGULAR COMMUNICATION BY MAIL BETWEEN THE PLACE OF MAILING AND THE PLACE SO
ADDRESSED. I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

DATE: _MAY 15, 05_ , _DE'ARcey Stewart_ _De'Arcey Stewart_
(DECLARANT/PRISONER)

JS44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

FILED

05 MAY 17 PM 3:58

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

'05 CV 1059 BTM    (RBB)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| **DeARCEY JAMUL STEWART** | **STUART J. RYAN, WARDEN ET AL.,** |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED **CALIPATRIA** PLAINTIFF (EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT (IN U.S. PLAINTIFF CASES ONLY) NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND |
|---|---|

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| DeARCEY JAMUL STEWART  J15499 PO BOX 5002 CALIPATRIA, CA 92233 | |

## II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business in This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

## IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).

### 28 U.S.C. 2254

## V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reappointment |
| ☐ Marine | ☐ 310 Airplane | ☐ 362 Personal Injury-Medical Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC881 | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment &Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 640 RR & Truck | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| | | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 861 HIA (13958) | ☐ 850 Securities/Commodities Exchange |
| ☐ 153 Recovery of Overpayment of Veterans Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 862 Black Lung (923) | |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC |
| ☐ Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 790 Other Labor Litigation | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Electmant | ☐ 443 Housing/Accommodations | ☒ 530 General | ☐ 791 Empl. Ret. Inc. | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Tort to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ Security Act | | ☐ 950 Constitutionality of State |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |

## VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)

☒ 1 Original Proceeding    ☐ 2 Removal from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify)    ☐ 6 Multidistrict Litigation    ☐ 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23

DEMAND $

Check YES only if demanded in complaint:
JURY DEMAND: ☐ YES ☐ NO

## VIII. RELATED CASE(S) IF ANY (See Instructions):
JUDGE _____    Docket Number _____

DATE  5/17/05

SIGNATURE OF ATTORNEY OF RECORD