UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

DeARCEY JAMUL STEWART,

Petitioner,

v.

JAMES TILTON, Secretary of the California Department of Corrections and Rehabilitation,

Respondent.

Civil No. 05-cv-1059 BTM (CAB)

**REPORT AND RECOMMENDATION DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## I. INTRODUCTION

Dearcey Jamul Stewart ("Petitioner"), a state prisoner proceeding pro se, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 1) challenging his San Diego County Superior Court conviction in case number 116366 for two counts of attempted murder (Lodgment No. 1 at 214-215). Petitioner contends his federal constitutional rights were violated because: (1) there is "newly discovered" evidence that was not known at trial which undermines the entire case of the prosecution, (2) the state court erred in denying petitioner's petition for writ of habeas corpus; (3) petitioner is "actually innocent," (4) due to "newly discovered" evidence, the evidence in petitioner's case is insufficient as a matter of law to sustain an attempted murder conviction. (*See* Doc. No. 1 at 7-27.)

This Court has considered the Petition, Respondents' Answer (Doc. No. 12) and Memorandum of Points and Authorities In Support of Answer to Petition for Writ of Habeas Corpus (Doc. No. 13),

Petitioner's Traverse (Doc. No. 31) and Memorandum of Points and Authorities in Support of Traverse to Return to Petition for Writ of Habeas Corpus (Doc. No. 31-2), Lodgements, and all the supporting documents submitted by the parties. Based upon the documents and evidence presented in this case, and for the reasons set forth below, this Court recommends that the Petition be **DENIED**.

## II. FACTUAL BACKGROUND

This Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1)(West 2007); *see also Parke v. Raley*, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from such facts, are entitled to statutory presumption of correctness). The facts as found by the state appellate court are as follows:

> In the early evening of September 23, 1995, Mark Parish and his brother Michael Parish were driving through an area of San Diego claimed by the Skyline Piru gang. As Michael got ready to make a left turn, he saw three men standing by a BMW automobile. (Michael had seen the men earlier that day at a football game, and identified them at trial as Lee, Stewart, and Anthony Reilly.) The three men "threw" the Piru gang sign (a hand gesture resembling the letter P), but Michael and Mark, who had ties to a rival gang, did not respond. Rather, Michael completed his left turn and continued on his way. Lee and Stewart then got into the BMW and followed the Parish brothers, with Stewart driving and Lee in the passenger seat. When the Parishes were stopped at a stoplight, Stewart pulled up alongside their car, and Lee pointed a handgun at them and started shooting. He fired about six shots, hitting Michael in the lung and the lower back and Mark in the shoulder. Lee and Stewart then sped off.
>
> Michael managed to drive to the home of his brother-in-law, San Diego Police Detective Sylvester Wade. Both Michael and Mark told Wade they had been shot by people they had seen before from "Skyline" and described the car as a four-door, light blue or silver BMW, with tinted windows and enkei wheel rims. Michael at first described the BMW as "rust colored," but then he agreed with Mark that it was "light silver-grayish" or "light-blue colored." Wade contacted the police and the paramedics on his police radio and relayed this information. At about midnight that night, the police found Stewart sitting in the BMW that police suspected had been involved in the shooting.
>
> When Mark was in the hospital on the night of the shooting, he learned from a person "from Skyline" that the street names of his assailants were "P-Du" and "Pufferoo" and passed this information on to Michael. Michael then gave these names to Wade, who checked police gang files and learned that "P-Du" was Stewart and "Pufferoo" was Lee. Wade obtained photographs of Stewart and Lee and prepared two photographic lineups; he also prepared a photographic lineup that included a picture of the BMW belonging to Stewart. Both Michael and Mark identified Stewart and Lee, as well as Stewart's BMW in the lineup.
>
> Stewart was arrested without incident on October 6, 1995. The police had trouble locating Lee, however. They were unable to find him at his house, and were told he was staying at a girlfriend's house in the Skyline area, but they did not know where. On October 16, Wade informed the uniformed gang suppression unit that detectives were looking for Lee in order to arrest him for attempted murder, and that if they found Lee, they could arrest him.
>
> Hours later, Officer Andrew Spear of the gang suppression unit saw Lee drive by while he and his partner, Officer Thomas Smith, were making a traffic stop. They

> immediately got into their patrol car and started after Lee. Lee drove to a gas station and walked away from his car. Smith motioned to him and said "come here." Lee turned back, waved and smiled at Smith, and continued walking away. Spear got out of the patrol car and Lee started to run. Spear chased after him and noticed that Lee kept reaching for his waistband as if he were trying to hold something there. Spear chased Lee into the corner of a parking lot surrounded by a tall chain-link fence. Lee then pulled out a gun from his waistband and turned toward Spear. Spear fired one shot at Lee, which missed; then Lee threw his gun into a nearby dumpster. Lee was arrested and police recovered the gun – a loaded semiautomatic which had been reported stolen from a sporting goods store in October 1994.

(Lodgement No. 7 at 3-6.)

**III. PROCEDURAL BACKGROUND**

By information filed on December 1, 1995, in San Diego Superior Court case number 116366, the San Diego District Attorney charged Petitioner and co-defendant Richard Charles Lee in counts 1 and 2 with attempted murder, in violation of California Penal Code sections 664 and 187(a). As to those counts, it was also alleged that (1) the attempted murder was deliberate and premeditated (Cal. Pen. Code § 189); (2) Lee personally used a firearm, a handgun (Cal. Pen. Code § 12022.5(a)); (3) Petitioner was armed with a firearm, a handgun (Cal. Pen. Code § 12022(a)(1)); (4) Lee inflicted great bodily injury (Cal. Pen. Code § 12022.7(a)); and (5) Lee had been released from custody on bail pending final judgment on an earlier felony offense (Cal. Pen. Code § 12022.1). (Lodgment No. 1 at 1-3.)

The information also charged Lee as follows: in count 3 with assault upon a peace officer with a seminautomatic firearm (Cal. Pen. Code § 245(d)), with an allegation that he personally used a firearm, a handgun (Cal. Pen. Code § 12022.5(a)); in count 4 with exhibiting a firearm to resist arrest (Cal. Pen. Code § 417.8); and in count 5 with receiving stolen property (Cal. Pen. Code § 496(a)). (Lodgment No. 1 at 3.)

The information further alleged that Petitioner had a prior conviction for robbery, identified as a "first prison prior," "first serious felony prior," and as a prior conviction of a serious and violent felony and juvenile adjudication (Cal. Pen. Code §§ 667.5 (b), 667(a)(1), 1192.7(c)(19), 667(b)-(I), and 1170.12). (Lodgment No. 1 at 3-4.)

A joint jury trial for Petitioner and co-defendant Lee began on March 26, 1996. (Lodgment No. 1 at 426.) The jury returned verdicts of guilty on all counts for co-defendant Lee, and guilty on counts 1 and 2 for Petitioner. The jury found as to counts 1 and 2 that the attempted murders were deliberate and premeditated, that Lee personally used a firearm and personally inflicted great bodily injury, and that

Petitioner was armed with a firearm. As to count 3, the jury found that Lee personally used a firearm. (Lodgment No. 1 at 213-219.)

In a bifurcated proceeding, the state trial court made a true finding on the bail release allegation as to co-defendant Lee. It also found that the prior conviction allegations as to Petitioner were true. (Lodgment No. 1 at 426, 452, 455-456, 459-460.)

On or about May 9, 1996, Petitioner filed a motion for a new trial on several grounds that are not at issue in this petition having to do primarily with the statements of one William Allen. (Lodgment No. 1 at 318-341.) Petitioner claimed there was prosecutorial misconduct (in violation of *Brady v. Maryland*, 373 U.S. 83 (1963)(*Brady*)) when prosecutors failed to provide discovery of the statements by William Allen to District Attorney investigator Mike Howard. (Lodgment No. 1 at 326.) [1] A hearing on the motion for a new trial was held on July 9, 17 and 18, 1996. (Lodgment No. 2 at 1-47, 48-122, 2013-2063.) After hearing the testimony of William Allen and other witnesses, and the argument of counsel, the state superior court denied the motion for a new trial. (Lodgment No. 2 at 2057-2063.)

On July 18, 1996, Petitioner was sentenced to a total of two life terms and seven years in state prison. The trial court imposed consecutive terms of life with the possibility of parole on counts 1 and 2, each enhanced by one year for the armed allegation. A five-year enhancement was imposed for

---

[1] In the new trial motion, Petitioner first argued that there was a violation of Penal Code § 1181 when one of the detectives, Officer Wade, was asked "Was Dearcey Stewart taken into custody on October 6, 1995?" and Officer Wade responded "Yes, he was taken to Donovan." (Lodgment No. 1 at 323.) Petitioner claimed this violated a previous trial court ruling that no evidence of Petitioner's prior felony conviction would be admitted (except under certain circumstances that did not occur). (*Id.* at 322, 323.) According to Petitioner, juror number three, Nelda Taylor, was employed as a program technician at Donovan state prison and, therefore, would know that Petitioner would only have been taken to Donovan if he had a prior conviction. (*Id.* at 323.) Petitioner requested that the Court find that Officer Wade's reference to Petitioner being taken to Donovan "was at a minimum negligent, if not intentional, prejudice sufficient to warrant a new trial under circumstances where such inadmissible evidence may be excluded." (Lodgment No. 1 at 325.)

The second ground Petitioner raised for seeking a new trial was that there was prosecutorial misconduct (in violation of *Brady v. Maryland*, 373 U.S. 83 (1963)(*Brady*)) when prosecutors failed to provide discovery of the statements by William Allen to District Attorney investigator Mike Howard, because such statements allegedly showed that prosecution witness Kevin Brown was being untruthful about Petitioner's alleged confession. (Lodgment No. 1 at 326.) In support, Petitioner filed declarations by William Allen and the jury foreperson, Lewis Barnum. (Lodgment No. 1 at 335-340.) Mr. Barnum declared that, if Mr. Allen had been allowed to testify as set forth in Mr. Allen's declaration, then Mr. Barnum "may have taken a different view of Kevin Brown's credibility, and [Mr. Barnum] may have voted differently in deliberations." (Lodgment No. 1 at 338.)

Finally, Petitioner sought a new trial on the grounds that the weight of evidence received by the jury was contrary to the verdict rendered on counts one and two. (Lodgment No. 1 at 328-334.)

Petitioner's prior conviction pursuant to California Penal Code section 667, subdivision (a). (Lodgment No. 1 at 397, 473.)[2]

On September 18, 1997, Petitioner filed a direct appeal from the state judgment of conviction with the Court of Appeal for the State of California, Fourth Appellate District, Division One. (Lodgment #3.) The appeal (Court of Appeals No. D026580) was based on essentially the same ground that was brought forward in the new trial motion: that the prosecution engaged in misconduct mandating reversal under *Brady* by failing to turn over the statements of William Allen. (Lodgment No. 3 at 1-5.)

On December 17, 1998, the California Court of Appeal, Fourth Appellate District, Division One, affirmed the conviction of Petitioner and his co-defendant Lee. The state Court of Appeal affirmed the judgment of conviction against Petitioner in its entirety. (Lodgment No. 7 at 1, 14). The state Court of Appeal also affirmed the conviction of co-defendant Lee but made some modifications to Lee's sentence. (Lodgment No. 7 at 1, 14-15.)

On January 26, 1999, co-defendant Lee filed a Petition for Review in the California Supreme Court. (Lodgment No. 8.) On February 19, 1999, Petitioner joined in the Petition for Review filed by co-defendant Lee, requesting that any decision reached by the California Supreme Court on the issues for review apply equally to Petitioner. (Lodgment No. 9.)[3] There is no evidence that Petitioner ever sought review of the *Brady* issue via direct appeal to the California Supreme Court.[4]

On March 9, 1999, the California Supreme Court denied the petition for review. (Lodgment No. 10.)

On August 31, 2000, in a state petition for writ of habeas corpus, co-defendant Lee's convictions for attempted murders were overturned, based upon new evidence proffered by one Darnell Jackson.

---

[2]Co-defendant Lee was sentenced to a total of two life terms and 29 years in state prison. (Lodgment No. 1 at 395-396, 472.)

[3]The issues presented by Lee in his Petition for Review were: (1) Lee's right to a fair trial were harmed by the Court of Appeal when it found the trial court did not err in failing to sever the counts filed against Lee; (2) Lee's due process rights were violated because the jury instruction on flight permitted an improper inference of guilt; and (3) the Court of Appeal, as to Lee's conviction for receiving stolen property, failed to consider that there was insufficient evidence that Lee knew the property was stolen. (Lodgment No. 8.)

[4]Petitioner asserts that he did file a direct appeal of that issue, but provides no case number or other citation. (Doc. No. 1 at 3.) Respondent asserts that Petitioner did not seek review of the *Brady* issue via direct appeal to the California Supreme Court. (Doc. No. 13 at 13.)

(Doc. No. 1 at 44, 45; Lodgment No. 16 at 1.) The new evidence "showed that the now deceased Arnold Adkins was the shooter and that Petitioner [Stewart] was the driver of the vehicle from which the shooting occurred." (Lodgment No. 16 at 1-2.)

On or about May 14, 2002, Petitioner filed a state petition for writ of habeas corpus in the Superior Court of the State of California, County of San Diego, case number HC 17038. (Lodgment No. 12.) In that petition, Petitioner asserted that newly discovered evidence showed that Darnell Jackson, and not he, was the driver of the vehicle from which shots were fired. (Lodgment No. 12 at 13, 14.) In support of his petition, Petitioner submitted declarations from the following individuals: Roy Vinson, Arnold Johnson and Tatiana Daniel. (Lodgment No. 12 at 19-24.)[5]

On June 11, 2002, the state superior court issued an order to show cause ("OSC") why the relief sought in the petition should not be granted. (Lodgment No. 13.) On October 4, 2002, the respondent (People of the State of California) filed a return to the OSC. (Lodgment No. 14.) On December 5, 2002, Petitioner filed a traverse (denial) to the return. (Lodgment No. 15.)

On December 17, 2002, after reviewing the petition, return and traverse, the California Superior Court denied the petition for writ of habeas corpus in its entirety without an evidentiary hearing (Lodgment No. 16 at 9), setting forth in a 9-page opinion all the reasons why it found the three declarations not to be credible. (*See* Lodgment No. 16 at 3-7.) Specifically, the court found as follows:

/ / / / /

---

[5] The California Court of Appeals summarized the contents of those three declarations as follows:

> Vinson declared that his nephew Adkins stated he shot two men, men Vinson now knows to be the Parish brothers. Vinson added although Adkins did not identify the person with him at the time of the shooting except as one of his "homies," Jackson was oneof Adkins' good friends and, around the time the Parishes were shot, Jackson had been trying to get rid of a revolver he said had been used in a shooting.
>
> In his declaration, Johnson stated his cousin Adkins told him he and Jackson shot and killed two men who had previously fired at them at a nightclub. Johnson added, when he approached Jackson at Adkins's [sic] funeral in 1997, Jackson expressed doubt that there was any relationship between Adkins's [sic] death and the earlier shooting because two other men named "Pee-Du" and "Puff" were in custody, everyone believed the men in custody had "done it" and, while Jackson and Adkins committed the crime, no one saw them.
>
> Jackson's girlfriend Daniels declared that a few weeks after the shooting Jackson admitted to her Adkins was the shooter and Jackson was the driver.
>
> Vinson and Johnson also declared that they have no connection to Stewart. All three declarants professed to have no reason to swear falsely for Stewart.

Lodgment No. 18 at 2.

> The petition on its face persuaded the court to make a preliminary determination that Petitioner would be entitled to the relief requested if his factual allegations were proved. . . . However, consideration of the evidence proffered in the People's return has convinced this court that the petition is without merit, is based on contrived or at least inaccurate evidence, and is supported by declarations from persons with biases towards the Petitioner and his co-defendant. Furthermore, the evidence presented generally fails to undermine the prosecution's entire case, is not conclusive in any respect, and fails to point unerringly to Petitioner's innocence or reduced culpability."

(Lodgment No. 16 at 8.)

On February 6, 2003, Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal (case number D041599). (Lodgment No. 17.) In that petition, Petitioner raised the following claims: (1) the newly discovered evidence undermined the entire case of the prosecution; (2) the state court erred in denying the Petition; (3) Petitioner was actually innocent; and (4) because of newly discovered evidence, the evidence was insufficient as a matter of law to sustain the conviction. (Lodgment No. 17 at 3 of 6, 4 of 6, 4 of 6(a), and 5-27.)

On May 23, 2003, the state Court of Appeal denied the petition for writ of habeas corpus. (Lodgment No. 18.) The state Court of Appeal reviewed the declarations of Roy Vinson, Arnold Johnson and Tatianna Daniels and determined that the declarations were inconclusive, did not point unerringly to innocence, and lacked credibility. (Lodgment No. 18 at 3-4.) The Court of Appeal held that "[t]he declarations at best raised an issue of credibility without providing a complete defense." (Lodgment No. 18 at 4.)

On September 4, 2003, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court (Case Number S118729). (Lodgment No. 19.) Petitioner again relied on the Vinson/Johnson/Daniels declarations and alleged the following: (1) Petitioner's conviction must be overturned based on newly discovered evidence which undermined the entire case of the prosecution and demonstrates his innocence; (2) the trial court violated his due process right to a fair hearing when it ruled Petitioner was not entitled to an evidentiary hearing; (3) Petitioner's case should be reversed because he is actually innocent and (4) due to newly discovered evidence, there is insufficient evidence as a matter of law to support the attempted murder conviction. (Lodgment No. 19.)

On August 11, 2004, the California Supreme Court issued an En Banc Order summarily denying the petition for writ of habeas corpus. (Lodgment No. 20.)

On May 17, 2005, Petitioner filed this petition for writ of habeas corpus. (Doc. No. 1)

## IV. DISCUSSION

Petitioner contends his federal constitutional rights were violated because: (1) there is "newly discovered" evidence that was not known at trial which undermines the entire case of the prosecution, (2) the state court erred in denying petitioner's petition for writ of habeas corpus; (3) petitioner is "actually innocent," (4) due to "newly discovered" evidence, the evidence in petitioner's case is insufficient as a matter of law to sustain an attempted murder conviction. (Doc. No. 1 at 7-27.)

Respondent claims the petition should be denied for two reasons: (1) the petition is barred by the statute of limitations pursuant to 28 U.S.C. §2244(d) and therefore should be dismissed with prejudice; and (2) petitioner's claim that he is entitled to reversal or a new trial based on newly discovered evidence fails to present a federal question; and the state court denials of his claim are not contrary to, or an unreasonable application of federal law. (Doc. No. 13 at 19-33.)

### A. THE PETITION IS UNTIMELY.

The Antiterrorism and Effective Death Penalty Act ("AEDPA") applies to all § 2254 habeas corpus petitions filed after April 24, 1996. *Smith v. Robbins*, 528 U.S. 259, 268 (2000). Petitioner filed his federal habeas petition on May 17, 2005. Therefore the AEDPA statute of limitations applies. The statute provides:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

"[W]hen a petitioner fails to seek a writ of certiorari from the United States Supreme Court, the AEDPA's one-year limitations period begins to run on the date the ninety-day period defined by Supreme Court Rule 13 expires." *Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 1999). Here, the

California Supreme Court denied Petitioner's petition for review on March 9, 1999. (Lodgment No. 10.) Petitioner did not file a petition for a writ of certiorari with the United States Supreme Court. Therefore, Petitioner's state court conviction became final for purposes of AEDPA's statute of limitations ninety days later, on or about June 9, 1999. Thus, absent any statutory or equitable tolling, the AEDPA statute of limitations expired on June 9, 2000.

Assuming the AEDPA statute of limitations is not extended by any of the provisions of 28 U.S.C. § 2244(d)(1), then Petitioner would not be entitled to statutory tolling under 28 U.S.C. 2244(d)(2). Petitioner filed his first state habeas corpus petition on May 14, 2002, approximately three years after his conviction became final and two years after the AEDPA statute of limitations expired. (Lodgment No. 12.) State habeas petitions filed *after* the expiration of the AEDPA statute of limitations period do not toll the one-year period. *See Jimenez v. Rice*, 276 F.3d 478, 482 (9th Cir. 2001). Thus, assuming the AEDPA statute of limitations expired on June 9, 2000, Petitioner would not be entitled to statutory tolling under 28 U.S.C. § 2244(d)(2).

The question is whether the AEDPA statute of limitations is extended by any of the provisions of 28 U.S.C. § 2244(d)(1). Petitioner does not qualify for statutory tolling under 28 U.S.C. (d)(1)(C) because Petitioner's claims do not depend on a new or recently recognized constitutional right.

Petitioner argues that he is entitled to statutory tolling under 28 U.S.C. § 2244(d)(1)(B). (Doc No. 31-2 at 4-7.) Section 2244(d)(1)(B) allows the AEDPA statute of limitations to begin to run "on the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action." Petitioner argues that the district attorney engaged in a "cover up" for nearly two and a half years when it failed to provide a letter to Petitioner's prior counsel regarding the new evidence received from Darnell Jackson, which evidence ultimately led to co-defendant Lee being granted state habeas relief. (Doc. No. 31-2 at 5.)

Petitioner's argument fails for two reasons. First, the letter sent from the district attorney to Lee's counsel does not exonerate Petitioner. In the letter, the district attorney informs counsel for co-defendant Lee that a witness (Darnell Jackson) has come forward with information that a (now deceased) Arnold Adkins (and not Lee) was the person who actually shot the Parish brothers. However, Mr.

Jackson confirmed that Petitioner (Stewart) was the driver of the vehicle involved in the attack. (*See* Doc. No. 31-2 at Ex. A.) Therefore, the letter does not exonerate Petitioner and arguably did not have to be provided under *Brady.*

Moreover, even if this letter should have been provided to counsel for Petitioner under *Brady*, the information contained in the letter was most likely available to Petitioner no later than August 31, 2000, which is when co-defendant Lee was granted habeas corpus relief. (*See* Doc. No. 1 at Ex. E.) Petitioner, on the other hand, claims there was "a cover up for nearly two and a half years. . . " (Doc. No. 31-2 at 5.) If "nearly two and a half years" is measured from the date of the letter to co-defendant Lee's counsel (July 14, 1998), then Petitioner admits he became aware of the information in approximately December of 2000. Any impediment posed by the alleged lack of knowledge of the information provided by Mr. Jackson would have been removed by December, 2000. Yet, Petitioner did not file his state habeas corpus petition (which would then arguably toll his AEDPA statute) until May 14, 2002, almost one and a half years later. Therefore, Petitioner's petition is still untimely under 28 U.S.C. § 2244(d)(1)(B).

This petition is also untimely under 28 U.S.C. § 2244(d)(1)(D), which allows the statute of limitations to begin to run on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." This petition is based on the evidence allegedly discovered after trial as set forth in the declarations of Roy Vinson, Arnold Johnson and Tatiana Daniels. (Doc. No. 1 at 48-50.) According to Petitioner's prior attorney, Petitioner (through his attorney) became aware of the information provided by Roy Vinson on or about April 20, 2001. *Id.* Petitioner's prior counsel made contact with Arnold Johnson on June 10, 2001, and with Tatianna Daniels in early May, 2002.[6] *Id.* However, the information contained in these three declarations was derivative of the information provided by Darnell Jackson[7] which, as set forth above, was available to Petitioner no later than December of 2000.

---

[6] Petitioner's attorney was aware of Ms. Daniels (although he did not know her last name) and her alleged testimony in or about June, 2001. *Id.*

[7]Mr. Vinson is the uncle of Arnold Arkins, whom Jackson identified as the actual shooter. Mr. Vinson claims Arkins told him that Arkins was the shooter and Mr. Jackson was the driver. (Doc. No. 1 at 31.) Mr. Johnson is the cousin of Arnold Arkins and claims that Mr. Arkins confessed that he (Arkins) and Jackson were the individuals responsible for the attack on the Parish brothers. (Doc. No. 1 at 34.) Ms. Daniels claims she is the former girlfriend of Mr. Jackson and that he (Jackson) had confessed to being involved in the attack on the Parish brothers. (Doc. No. 1 at 38.)

Under 28 U.S.C. §2244(d)(1)(D), commencement of the one-year limitation period can be delayed to start on the date on which "the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." The time begins "'when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance.'" *Hasan v. Galaza*, 254 F.3d 1150, 1154 n. 3 (9th Cir. 2000) (quoting *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000)). Section 2244(d)(1)(D) accordingly allows the limitation period to start running at a later date "when the facts on which a federal habeas claim is based would not have been discovered by a duly diligent petitioner." *Ybanez v. Johnson*, 204 F.3d 645, 646 (5th Cir. 2000) (citation omitted). Courts should be careful not to confuse a petitioner's knowledge of the factual predicate of his claims with the time permitted for gathering evidence in support of the claims: "Section 2244(d)(1)(D) does not convey a statutory right to an extended delay . . . while a habeas petitioner gathers every possible scrap of evidence that might . . . support his claim[s]." *Flanagan v. Johnson*, 154 F.3d 196, 198-99 (5th Cir. 1998). In order to claim the benefit of tolling in this case, it is Petitioner's burden to establish it. *Smith v. Duncan*, 297 F.3d 809, 814 (9th Cir. 2002); *see Hinton v. Pac. Enters.*, 5 F.3d 391, 395 (9th Cir. 1993) (party seeking tolling bears the burden of alleging facts which would give rise to tolling).

Here, the factual predicate arguably was known to Petitioner by mid to late 2000, which is the time frame when Petitioner admits that he learned of the information provided by Darnell Jackson. Even though the specific letter from the district attorney to co-defendant Lee's counsel does not mention any alleged testimony by Mr. Vinson, Mr. Johnson or Ms. Daniels, those three individuals are all related to or affiliated with Mr. Jackson in some way. Arguably, a diligent investigation would have revealed the existence of these individuals far sooner than April 20, 2001 (the date Mr. Vinson allegedly contacted Petitioner's prior counsel). Nevertheless, even assuming the factual predicate could not have been known until April 20, 2001, that date still does not make this petition timely. That is, if (pursuant to 28 U.S.C. §2244(d)(1)(D)) the statute of limitation did not begin to run until April 20, 2001, then it expired one year later – on April 20, 2002. Petitioner's first state habeas petition was not filed until May 14, 2002, which is 25 days after the AEDPA statute of limitations expired. Therefore, section 2244(d)(1)(D)

does not sufficiently extend the AEDPA statute of limitations to make this petition timely.[8]

Further, Petitioner is not entitled to any equitable tolling of the limitations period, which is available upon a showing that a petitioner has been pursuing his rights diligently and that extraordinary circumstances beyond his control prevented him from timely filing the petition. *Pace v. DiGuglielmo*, 544 U.S. 408, 125 S.Ct. 1807, 1814 (2005). "When external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling of the statute of limitations may be appropriate." *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999). The prisoner must show that "the 'extraordinary circumstances' were the cause of his untimeliness." *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003) (citations omitted). The only "extraordinary circumstance" Petitioner references is the alleged failure by the prosecution to forward the letter dated July 14, 1998, regarding Darnell Jackson to Petitioner's prior counsel. (Doc. No. 31-2 at 5.) However, for the reasons set forth above, this does not merit equitable tolling because Petitioner did have the information by mid to late 2000, and still failed to file a state habeas petition within the AEDPA statute of limitations.

Finally, Petitioner cannot avoid the AEDPA statute of limitations bar due to his alleged actual innocence. A claim untimely under AEDPA may be reviewed if the court's failure to hear it will result in a miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298 (1995). "A petitioner may establish a procedural "gateway" permitting review of defaulted claims if he or she demonstrates "actual innocence." *Gandarela v. Johnson*, 286 F.3d 1080, 1085-86 (9th Cir. 2002). "[I]f a petitioner presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claim." *Schlup*, 513 U.S. at 316.

First, the Ninth Circuit has not ruled on whether there is in fact an actual innocence exception to

---

[8]Petitioner's counsel did not make contact with Mr. Johnson and Ms. Daniels until June 10, 2001, and early May, 2002, respectively. If these dates are used as the dates of "discovery," then arguably Petitioner might have some relief under 28 U.S.C. § 2244(d)(1)(D). However, the information provided by Mr. Johnson and Ms. Daniels was essentially duplicative of that provided by Mr. Vinson. Therefore, these later declarations do not justify a later start date under 28 U.S.C. §2244(d)(1)(D). *See Flanagan*, 154 F.3d at 198-99 ("Section 2244(d)(1)(D) does not convey a statutory right to an extended delay . . . while a habeas petitioner gathers every possible scrap of evidence that might . . . support his claim[s].")

the AEDPA statute of limitations bar. *See Majoy v. Roe*, 296 F.3d 770, 776 (9th Cir. 2002). Second, even if such an exception did exist, Petitioner does not meet the actual innocence standard. "The required evidence must create a colorable claim of actual innocence, that the petitioner 'is innocent of the charge for which he [is] incarcerated,' as opposed to legal innocence as a result as a result of legal error." *Gandarela v. Johnson*, 286 F.3d 1080, 1085-86 (9th Cir. 2002) (quoting *Schlup*, 513 U.S. at 321). "'[A] colorable showing amounts to establishing that it is more likely than not that no reasonable juror would have convicted the petitioner in light of the new evidence.'" *Gandarela*, 286 F.3d at 1085-86 (quoting *Paradis v. Arave*, 130 F.3d 385, 396 (9th Cir. 1997)). "Actual innocence" means factual innocence, not merely legal insufficiency; a mere showing of reasonable doubt is not enough. *See Wood v. Hall*, 130 F.3d 373, 379 (9th Cir. 1997).

The new evidence must demonstrate that it is "more likely than not" that no reasonable juror would have convicted the petitioner beyond a reasonable doubt. *Schlup*, 513 U.S. at 327. Here, the "new evidence" presented by Petitioner (the declarations of Vinson, Johnson and Daniels) does not meet the *Schlup* standard. Petitioner presented the same evidence in his state petition for habeas corpus. (Lodgment #12.) Not only were these declarations reviewed by the state court, but the state superior court issued an order to show cause why the relief sought in the petition should not be granted. (Lodgment #13.) Thus, further briefing and evidence was provided to the state court with regard to these three declarations by the prosecution (Lodgment #14) and by Petitioner (Lodgment #15). After reviewing all of the evidence and briefing, the California Superior Court denied the petition for writ of habeas corpus in its entirety, setting forth in a 9-page opinion all the reasons why it found the three declarations not to be credible. (Lodgment No. 16 at 3-7.)

Petitioner also filed a petition for writ of habeas corpus with the California Court of Appeal, and again claimed "actual innocence" based on the declarations of Vinson, Johnson, and Daniels. (Lodgment No. 17.) The state Court of Appeal denied the petition and determined that the declarations of Vinson, Johnson and Daniels were inconclusive, did not point unerringly to innocence, and lacked credibility. (Lodgment No. 18 at 3-4.) Finally, Petitioner also presented the declarations to the California Supreme Court, claiming that there was a federal constitutional error because the new evidence undermines the prosecution's case and establishes his innocence. (Lodgment No. 19.) The

California Supreme Court issued an En Banc Order summarily denying the petition. (Lodgment No. 20.)

Three state courts have reviewed the "new evidence" that Petitioner claims shows his actual innocence, and all of those courts have determined that the evidence is not credible. After reviewing the substantial state court record and all of the record in the is petition, this court finds that Petitioner has not met the *Schlup* threshold. The declarations of Vinson, Johnson and Daniels are simply not credible for the reasons set forth by the state courts. (*See* Lodgment Nos. 16 and 18.) Moreover, the evidence presented by Mr. Jackson, which ultimately led to co-defendant Lee obtaining habeas relief, does not prove that Petitioner is innocent (in fact, it confirms Petitioner's participation in the crime.) (*See* Doc. No. 31-2 at Ex. A.) Petitioner simply has not met the *Schlup* standard.

Accordingly, this petition is barred by the statute of limitations set forth in 28 U.S.C. §2244(d) and should be **DISMISSED WITH PREJUDICE**.

**B. EVEN IF THE PETITION IS TIMELY, IS SHOULD BE DENIED.**

Even if the petition is timely, it should be denied because: (1) Petitioner fails to present a federal question; (2) the state court denials of his claim are not contrary to, or an unreasonable application of, federal law (and appear to be reasonable determinations of fact); and (3) Petitioner has not shown that he is actually innocent.

1. Scope of Review.

Title 28, United States Code, § 2254(a), sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C.A. § 2254(a) (West 2006) (emphasis added).

As amended, 28 U.S.C. § 2254(d) reads:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

/ / / / /

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254(d)(1)-(2) (West 2006) (emphasis added).

"AEDPA establishes a 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" *Womack v. Del Papa*, 497 F.3d 998, 1001 (9th Cir. 2007) (quoting *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002)). To obtain federal habeas relief, Petitioner must satisfy either section 2254(d)(1) or section 2254(d)(2). *See Williams v. Taylor*, 529 U.S. 362, 403 (2000). The Supreme Court interprets section 2254(d)(1) as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams*, 529 U.S. at 412-13; *see also Lockyer v. Andrade*, 538 U.S. 63, 73-74 (2003).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision. *Y1st v. Nunnemaker*, 501 U.S. 797, 801-06 (1991). If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by *Lockyer*, 538 U.S. at 75-76); *accord Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). However, a state court need not cite Supreme Court precedent when resolving a habeas corpus claim. *Early v. Packer*, 537 U.S. 3, 8 (2002). "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent,]" *id.*, the state court decision will not be "contrary to" clearly established federal law. *Id.*

2. Analysis.

Petitioner contends his federal constitutional rights were violated because: (1) there is "newly discovered" evidence that was not known at trial which undermines the entire case of the prosecution, (2) the state court erred in denying petitioner's petition for writ of habeas corpus; (3) petitioner is "actually innocent," (4) due to "newly discovered" evidence, the evidence in petitioner's case is insufficient as a matter of law to sustain an attempted murder conviction. (Doc. No. 1 at 7-27.)

While Petitioner breaks his claims into four grounds, he essentially is making two claims: (1) that the state courts erred when they denied him habeas relief without an evidentiary hearing when presented with the "new evidence," and (2) he is actually innocent. As set forth below, the claims should be denied because: (a) Petitioner fails to present a federal question; (b) the state court denials of his claim are not contrary to, or an unreasonable application of, federal law (and appear to be reasonable determinations of fact); and (c) Petitioner has not shown that he is actually innocent.

a. <u>The claim regarding the state court decisions does not state a federal question</u>.

As discussed above, Petitioner presented the same "new evidence" to three state courts seeking habeas relief and an evidentiary hearing. All three courts denied the relief, and two of them provided detailed opinions as to why the new evidence was not credible and did not warrant an evidentiary hearing. (*See* Lodgment Nos. 16 and 18.) Petitioner alleges that the courts erred in making that determination. (*See* Doc. No. 1 at 13-18.) However, habeas relief is not available for an alleged error in the interpretation or application of state law. "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States." *Estelle*, 502 U.S. 62, 68 (1991). Petitioner makes vague reference to his Fourteenth Amendment right to due process being violated because certain witnesses allegedly lied at trial. (Doc. No. 1 at 12.) But Petitioner does not show how the state courts' failure to provide habeas relief and an evidentiary hearing violated the federal constitution. Therefore, this claim cannot be reviewed in federal court.

b. <u>The State Court denials are not contrary to, or an unreasonable application of, federal law; and the denials appear to be reasonable determinations of fact</u>.

It appears from the extensive state court record that California law was followed, and the denials appear to be reasonable determinations of fact in light of the evidence presented at trial and in the state habeas proceedings. In California, newly discovered evidence is a basis for relief only if it undermines the prosecution's entire case. *In re Clark*, 5 Cal. 4th 750, 766 (1993). "It is not sufficient that the evidence might have weakened the prosecution case or presented a more difficult question for the judge or jury." *Id.* (citations omitted). "'[A] criminal judgment may be collaterally attacked on the basis of 'newly discovered' evidence only if the 'new' evidence casts fundamental doubt on the accuracy and reliability of the proceedings. At the guilt phase, such evidence, if credited, must undermine the entire

prosecution case and point unerringly to innocence or reduced culpability.'" *Id.* (quoting *People v. Gonzalez*, 51 Cal.3d 1179, 1246 (1990)). As discussed above, Petitioner presented the same "new evidence" in his state petition for habeas corpus. (Lodgment #12.) Not only were these declarations reviewed by the state court, but the state superior court issued an order to show cause why the relief sought in the petition should not be granted. (Lodgment #13.) Thus, further briefing and evidence was provided to the state court with regard to these three declarations by the prosecution (Lodgment #14) and by Petitioner (Lodgment #15). After reviewing all of the evidence and briefing, the California Superior Court denied the petition for writ of habeas corpus in its entirety, setting forth in a 9-page opinion all the reasons why it found the three declarations not to be credible. (*See* Lodgment No. 16 at 3-7.) Ultimately, the state Superior Court found " the evidence presented generally fails to undermine the prosecution's entire case, is not conclusive in any respect, and fails to point unerringly to Petitioner's innocence or reduced culpability." (Lodgment No. 16 at 8.)

Further, under California law, evidentiary hearings may granted under the following circumstances:

> Once the issues have been joined [by the filing of the return and traverse], the court must determine whether an evidentiary hearing is needed. If the written return admits allegations in the petition that, if true, justify the relief sought, the court may grant relief without an evidentiary hearing. [Citations omitted.] Conversely, *consideration of the written return and matters of record may persuade the court that the contentions advanced in the petition lack merit, in which event the court may deny the petition without an evidentiary hearing.* [Citations omitted.] Finally, if the return and traverse reveal that petitioner's entitlement to relief hinges on the resolution of factual disputes, then the court should order an evidentiary hearing. [Citation omitted.]

*People v. Romero*, 8 Cal. 4th 728, 739-40 (emphasis added).

In it's opinion, the state superior court held as follows:

> The petition on its face persuaded the court to make a preliminary determination that Petitioner would be entitled to the relief requested if his factual allegations were proved. [Citation omitted.] However, consideration of the evidence proffered in the People's return has convinced this court that the petition is without merit, is based on contrived or at least inaccurate evidence, and is supported by declarations from persons with biases towards Petitioner and his co-defendant. Furthermore, the evidence presented generally fails to undermine the prosecution's entire case, is not conclusive in any respect, and fails to point unerringly to Petitioner's innocence or reduced culpability.
>
> Therefore, Pursuant to rule 4.551(f) of the California Rules of Court and for the reasons set forth herein, the petition is hereby denied in its entirety without an evidentiary hearing because 'consideration of the written return (and denial) and matter of record . . . persuade the court that the contentions advanced in the petition lack merit . . . "

(Lodgment No. 16 at 8-9, quoting *Romero*, 8 Cal. 4th at 739.)

Thus, the California Superior Court appears to have followed California law when denying Petitioner an evidentiary hearing, and the decision appears to be a reasonable determination of the facts.

Similarly, the California Court of Appeal also reviewed Petitioner's new evidence/innocence claim based on the declarations of Vinson, Johnson and Daniels, and also concluded that the declarations "at best raise[d] an issue of credibility without providing a complete defense," and did not entitle Petitioner to state habeas relief. (Lodgment No. 18 at 4.) Finally, the California Supreme Court also denied Petitioner's new evidence/innocence claims and summarily denied his petition. (Lodgment No. 20.) All of these decisions are in accordance with California law. Moreover, there is no indication that the state court denials are contrary to, or an unreasonable application of federal law. Accordingly, Petitioner has no claim upon which federal habeas relief can be granted.

c. <u>Petitioner has not met the standard for showing actual innocence</u>.

Petitioner claims that the declarations of Vinson, Johnson and Daniels show that he is actually innocent. (*See* Doc. No. 1 at 19-23.) Respondents argue that federal law does not recognize an independent substantive claim of innocence in a habeas proceeding and cite to *Herrera v. Collins*, 506 U.S. 390, 400 (1993) to support that argument. [Doc. No. 13 at 28.] "The majority opinion in *Herrara*, however, assumed for purposes of decision that 'a truly persuasive' demonstration of actual innocence would render the execution of a defendant unconstitutional, but that 'the threshold showing for such an assumed right would necessarily be extraordinarily high.'" *Jackson v. Calderon*, 211 F.3d 1148, 1164-65 (quoting *Herrera*, 506 U.S. at 417); *see also Carriger v. Stewart*, 132 F.3d 463, 476 (9th Cir. 1997) (noting that a majority of the Justices in *Herrera* would have supported a claim of free-standing actual innocence). Moreover, in *Carriger*, the Ninth Circuit held "a habeas petitioner asserting a freestanding innocence claim must go beyond demonstrating doubt about his guilt, and must affirmatively prove that he is probably innocent." 132 F.3d at 476. Demonstrating probable innocence requires "a stronger showing than insufficiency of the evidence to convict." *Id.* Thus, while an actual innocence claim may exist under federal law, the standard to meet such a claim is "extraordinarily high." *Herrera*, 506 U.S. at 417.

After reviewing the substantial state court record and all of the record in this petition, this court finds that Petitioner has not met the actual innocence threshold. The declarations of Vinson, Johnson

and Daniels are simply not credible for the reasons set forth by the state courts. (Lodgment Nos. 16 and 18.) Moreover, the evidence presented by Mr. Jackson, which ultimately led to co-defendant Lee obtaining habeas relief, does not prove that Petitioner is innocent (in fact, it confirms Petitioner's participation in the crime.) (*See* Document No. 31-2 at Ex. A.) Therefore, Petitioner's claim for federal habeas relief on the basis of actual innocence should be denied.[9]

## V. CONCLUSION

The Court submits this Report and Recommendation to United States District Judge Barry Ted Moskowitz under 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California. For the reasons outlined above, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered **DISMISSING THE PETITION WITH PREJUDICE** on the grounds that it is untimely or, in the alternative, **DENYING** the Petition in its entirety.

**IT IS ORDERED** that no later than **March 31, 2008**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **10 days after being served with the objections**. The parties are advised that failure to file objections within the specified time may waive the right to raise those

/ / / / /

/ / / / /

/ / / / /

/ / / / /

[9] While Petitioner does not specifically request an evidentiary hearing in this matter, presumably that is his desire given his claim that the state courts improperly failed to provide him with an evidentiary hearing. After the passage of the AEDPA, facts determined by a state court are presumed correct unless rebutted by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). The applicant has the burden of rebutting that presumption by "clear and convincing evidence." *Id. See also Bashor v. Risley*, 730 F.2d 1228, 1233 (9th Cir. 1984) (holding that an evidentiary hearing is not required on issues which can be resolved on the basis of the state court record). For the reasons set forth above, Petitioner has failed to show by clear and convincing evidence that the facts determined by the state court in direct appeal and in state habeas review were incorrect. Therefore, Petitioner is not entitled to an evidentiary hearing.

objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED**.

DATED: February 28, 2008

**CATHY ANN BENCIVENGO**
United States Magistrate Judge