1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

11   DEARCEY JAMES STEWART,                         Civil No. 05cv1059-BTM (CAB)

12                              Petitioner,         **ORDER:**

13                                                  **(1)  DECLINING TO ADOPT THE
                                                    FINDINGS AND CONCLUSIONS OF
14                                                  UNITED STATES MAGISTRATE**
        vs.                                         **JUDGE;**

15                                                  **(2)  GRANTING PETITIONER'S
                                                    AMENDED MOTION FOR LEAVE TO**
16                                                  **AMEND THE PETITION;**

17                                                  **(3)  DIRECTING THE CLERK OF
                                                    COURT TO FILE THE PROPOSED**
18   MATTHEW CATE, Secretary of the                 **AMENDED PETITION AS A FIRST**
     California Department of Corrections and       **AMENDED PETITION; AND,**
19   Rehabilitation,

20                              Respondent.         **(4)  ISSUING A SCHEDULING ORDER
                                                    ON PETITIONER'S MOTION FOR**
21                                                  **DISCOVERY**

22          Petitioner is a California prisoner proceeding pro se with a Petition for a Writ of Habeas

23   Corpus pursuant to 28 U.S.C. § 2254.  (Doc. No. 1.)  Petitioner challenges his San Diego County

24   Superior Court conviction of two counts of attempted murder, contending that: (1) newly

25   discovered evidence showing that he was not the driver of the car from which the shots were

26   fired undermines the prosecution's case; (2) the state court erred in denying the habeas petition

27   in which he presented the newly discovered evidence; (3) he is actually innocent; and (4) in light

28   of the newly discovered evidence there is insufficient evidence to support his conviction.  (Pet.

at 6-9.)  Respondent has filed an Answer to the Petition accompanied by a Memorandum of Points and Authorities in Support, contending that Petitioner is not entitled to habeas relief because: (1) the Petition was filed after expiration of the one-year statute of limitations set forth in 28 U.S.C. § 2244(d); (2) the claims are not cognizable on federal habeas corpus; and (3) the state court decisions denying Petitioner's claims were neither contrary to, nor involved an unreasonable application of, clearly established federal law.  (Doc. Nos. 12-13.)  Petitioner has filed a Traverse.  (Doc. No. 31.)

Presently before the Court is a Report and Recommendation ("R&R") submitted by United States Magistrate Judge Cathy Ann Bencivengo which recommends dismissing the Petition as untimely, or alternately denying the Petition because Petitioner has not established actual innocence and the remaining claims do not present federal questions.  (Doc. No. 37.) Petitioner has filed Objections to the R&R.  (Doc. No. 52.)  Petitioner has also filed a Motion for Discovery seeking to compel Respondent to turn over exculpatory materials, and an Amended Motion for Leave to Amend the Petition in order to adequately plead the federal basis of his claims.  (Doc. Nos. 41, 50.)

The Court has reviewed the R&R, as well as Petitioner's Objections and Motions, pursuant to 28 U.S.C. § 636(b)(1), which provides that: "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).  For the following reasons, the Court declines to adopt the findings and conclusions of the Magistrate Judge, grants Petitioner's Amended Motion for leave to amend, directs that the proposed amended petition be filed as a First Amended Petition, and issues a briefing schedule directing a response to the Motion for Discovery.

## I.    Background

Petitioner was convicted on April 12, 1996, after a joint trial, of two counts of attempted murder as the driver of a car from which his co-defendant Richard Charles Lee was found to have shot two brothers, Mark and Michael Parish.  The appellate court affirmed the convictions

of both men on December 17, 1998, although it modified Lee's sentence, and the state supreme court denied the consolidated petitions for review on March 9, 2000. (Lodgment Nos. 7, 10.) Lee, however, obtained habeas relief from the trial court on August 31, 2000. (Pet. Ex. E, In re Lee, No. HC16243 (Cal.Sup.Ct. Aug. 31, 2000).) The order which vacated Lee's conviction and ordered a new trial did so in a summary fashion, stating that relief is appropriate because "the People do not oppose the petition" as they "conceded that there appears to be newly discovered evidence which is sufficiently credible to cast doubt on the integrity of [Lee's] convictions." (Id. at 1.) Petitioner contends that to this day he does not know exactly what evidence resulted in the overturning of Lee's conviction, but believes it was based on a letter dated July 14, 1998, sent by the District Attorney to Lee's attorney, which states that the District Attorney had received third-hand information regarding Lee which was being disclosed to Lee pursuant to Brady v. Maryland, 373 U.S. 83, 87 (1963). (Traverse Ex. A.) In that letter, the District Attorney informed Lee's counsel that Darnell Jackson, through his attorney, had approached the District Attorney with an offer of proof regarding information that Jackson had "about certain unsolved cases." (Id.) The letter states that Jackson informed the District Attorney that Petitioner and Arnold Adkins were the people who shot the Parish brothers, that Jackson had "described for his attorney the facts of how and where the Parish brothers were shot," that Jackson's "statements were consistent with the police reports with the exception of Adkins being identified as one of the shooters instead of Lee," and states that Adkins was recently deceased. (Id.) The letter reports that Jackson made the following statement:

> Jackson stated that Richard Lee was in fact involved in a shooting that same day, but not the shooting of the Parish brothers. Jackson told his attorney that Richard Lee met up with Adkins and [Petitioner] at Anthony Riley's house after the shooting of the Parish brothers. Jackson stated that Lee came from a car function at Martin Luther King Park. Jackson reportedly told his attorney that when Adkins and [Petitioner] told Lee about the Parish brothers shooting, Lee became excited and wanted to do a shooting also. Jackson stated that the group was aware of a party in Emerald Hills so they went there to do a shooting. They saw a group and parked 1/2 block away, Lee walked up to the group and fired several rounds into the crowd and then fled back to the car. Jackson stated that the person killed was named "Gee Wiz." I checked with SDPD homicide detectives and there was a person with the moniker Gee Wiz killed about one hour after the Parish brothers shooting.

(Id.)

Petitioner contended in his Traverse that he did not receive a copy of the July 14, 1998 letter until two and one-half years after it was written, and alleged that the failure of the District Attorney to provide him a copy of the letter, and the continued refusal to divulge the evidence upon which the reversal of Lee's conviction is based, is part of a "cover-up" to protect Jackson's credibility because he is an important prosecution witness in other cases.  (Traverse at 5-12.) Petitioner contends in his Objections and his Amended Motion to amend that he became aware of the contents of the letter in January 2003, but did not actually receive a copy of the letter until after he filed his federal habeas Petition.  (Objections at 3; Pet.'s Amended Mot. to Amend at 4.)  However, the contents of the letter were described in a state habeas petition filed on Petitioner's behalf by his attorney on May 10, 2002. (Lodgment No. 12 at 13.)  It was averred in that petition that Lee's attorney had conducted an investigation based on the information contained in the July 14, 1998 letter, and had discovered that Jackson was also an informant in another case regarding Skyline gang members, that Jackson was in the witness protection program and unavailable, and that Lee's attorney had obtained declarations from individuals from the Skyline area corroborating Jackson's statement that Adkins had shot the Parish brothers.  (Id. at 13-14.)  Those declarations are attached to the Traverse as Exhibits B-D.

In the habeas petition filed in the trial court, Petitioner's counsel indicated that, based on the information provided in Lee's habeas petition, he had conducted his own investigation, and that "on or about April 20, 2001, I received a letter from Roy Vinson [an uncle of Adkins], advising me that he had information that petitioner had been wrongly convicted in the shooting of the Parish brothers in case no. SCD 116366. Mr. Vinson advised me that Darnell Jackson was the driver of the vehicle from which Arnold Adkins had shot the Parish brothers." (Id. at 5-6.) Counsel goes on to state that he was contacted by Arnold Johnson, a cousin of Adkins, on June 10, 2001, and that:  "Johnson informed me that at the funeral of Arnold Adkins, Darnell Jackson admitted to being the driver of the vehicle used in the shooting of the Parish brothers.  Mr. Johnson further informed me that Arnold Adkins had also informed him of that fact in late 1996." (Id. at 6.)  Finally, counsel stated that: "Shortly after obtaining the declaration of Arnold Johnson, I was informed of a former girlfriend of Darnell Jackson, one Tatiana Daniels who

had made statements to others that Darnell Jackson had personally confessed to his involvement in the shooting of the Parish brothers.  [¶]  I spent many months attempting to get in contact with 'Tatianna', known to me only by that name."  (Id.)  Attached to the state habeas petitions are declarations by Vinson, Johnson and Daniels, dated May 6, 2001, July 26, 2001 and May 6, 2002, respectively.  (Id. at 19-24.)  These are the same declarations relied on by Petitioner in the instant federal Petition.  (Pet. Exs. A-C.)  However, as discussed below, only the Daniels declaration provides direct evidence that Jackson was the driver.

The trial court issued an order to show cause, and the District Attorney responded with evidence that Vinson, Johnson and Daniels had provided prior inconsistent statements regarding Jackson's involvement in the Parish brothers shooting, were all associated with the same gang to which Petitioner belonged, the Skyline Pirus, and that Vinson and Johnson had been convicted of multiple felonies and were serving life sentences.  (Lodgment No. 14.)  The appellate court denied relief on the basis that "the 'newly discovered' evidence presented herein is clearly insufficient to support a conclusion that points unerringly to Petitioner's innocence."  (Lodgment No. 16, In re Stewart, No. HC 17038, slip op. at 3 (Cal.Sup.Ct. Dec. 17, 2002).)  The court found that "the evidence is not credible because of inherent inaccuracies and witness bias.  Moreover, it does not completely undermine the prosecution's case or point unerringly to Petitioner's innocence, and the evidence includes inadmissible hearsay."  (Id.)  Petitioner, acting pro se, constructively filed a habeas petition in the appellate court on January 29, 2003.[1]  (Lodgment No. 17.)  That petition was denied on May 23, 2003, in a four-page order in which the appellate court agreed with the conclusions of the trial judge regarding the reliability of the Vinson, Johnson and Daniels declarations and the inadmissibility of the hearsay contained therein, and concluded that:  "The declarations at best raise an issue of credibility without providing a complete defense."  (Lodgment No. 18, In re Stewart, No. D041599, slip op. at 3-4 (Cal.App.Ct. May 23, 2003.)  Petitioner presented the same claims in a pro se habeas petition constructively

---

[1] Petitioner is entitled to the benefit of the "mailbox rule" which provides for constructive filing of court documents as of the date they are submitted to the prison authorities for mailing to the court. Anthony v. Cambra, 236 F.3d 568, 574-75 (9th Cir. 2000).  The Court will use the constructive filing dates throughout this Order.

1  filed in the state supreme court on August 31, 2003, which was denied on August 11, 2004 by

2  an order which stated: "Petition for writ of habeas corpus is DENIED." (Lodgment Nos. 19-20.)

3      Petitioner alleges in claim one of his federal Petition that the state courts erred in denying

4  his state habeas petitions because the new evidence shows that his conviction was based on the

5  unreliable and perjured eyewitness identification testimony of the Parish brothers, that he was

6  therefore convicted in violation of the Fourteenth Amendment, and that habeas relief is available

7  under 28 U.S.C. § 2254(d)(1) because the state court adjudication of his claims was contrary to

8  Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  (Pet. at 6-6e.)   He contends in claim two that

9  the state courts erred in determining that the Vinson, Johnson and Daniels declarations were not

10  credible without conducting an evidentiary hearing, but identifies no basis for a violation of his

11  federal rights other than indicating that development of the record in this regard, and in particular

12  exposing Jackson as lying about his participation in the shooting in order to maintain his good

13  standing with the District Attorney, goes to the heart of his actual innocence claim.  (Pet. at 7-

14  7e.)  Petitioner alleges in claim three that he is actually innocent of the crimes for which he

15  stands convicted, and that the newly discovered evidence, which consists not only of the Vinson,

16  Johnson and Daniels declarations showing Jackson was the driver, but also a statement by

17  William Allen impeaching Kevin Brown which was not turned over by the prosecutor,

18  demonstrates that he was convicted in violation of his Fifth and Fourteenth Amendment rights

19  to due process.  (Pet. at 8-8d.)  Finally, Petitioner alleges in claim four that, in light of the newly

20  discovered evidence, there is insufficient evidence to support his conviction, and the denial of

21  his state habeas petition was therefore contrary to clearly established United States Supreme

22  Court authority.  (Pet. at 9-9c.)

23      Respondent contends the Petition is barred by the one-year statute of limitations and that

24  the claims do not present federal questions. (Memorandum of Points and Authorities in Support

25  of Answer at 11-19.)  Respondent argues that the state court adjudication of the claims could not

26  be contrary to, or involve an unreasonable application of, clearly established federal law,

27  because the United States Supreme Court has never established a rule requiring states to provide

28  an evidentiary hearing or a new trial based on newly discovered evidence.  (Id. at 19-25.)

Petitioner replies in his Traverse that the prosecution committed <u>Brady</u> error and suborned perjury by not disclosing to Petitioner the information which was given to Lee's attorney, which the prosecution apparently became aware of while Petitioner's direct appeal was pending, and argues that any potential untimeliness here was caused by the state preventing him from interviewing Jackson or failing to disclose Jackson's statements. (Traverse at 1-5.) Petitioner also argues that his claims do in fact present federal questions. (<u>Id.</u> at 5-22.)

The Magistrate Judge found that the latest the one-year statute of limitations began to run was when Petitioner became aware of the newly discovered evidence, either when Lee was granted habeas relief on August 31, 2000, or at the latest when Petitioner's counsel was contacted by Vinson on April 20, 2001 and told that Jackson was the driver, and that the instant Petition, constructively filed on May 15, 2005, was untimely. (R&R at 8-14.) The Magistrate Judge found that statutory tolling was unavailable for the time Petitioner was pursuing one complete round of state post-conviction collateral review from May 14, 2002 until August 11, 2004, because the one-year limitations period had already expired prior to commencement of the state habeas proceedings. (R&R at 9-12.) The Magistrate Judge also found that equitable tolling was not available because any impediment to the filing of the state habeas petition ended when Petitioner became aware of the newly discovered evidence as late as April 20, 2001, and that Petitioner had not made a sufficient showing of actual innocence so as to avoid operation of the statute of limitations. (R&R at 12-14.) Finally, the Magistrate Judge found, in the alternative, that Petitioner's claims did not present federal questions, with the possible exception of his actual innocence claim, but that Petitioner had failed to establish that he is actually innocent, and had in any case failed to establish that the adjudication of any of his claims by the state courts was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts. (R&R at 14-19.)

Petitioner objects to the findings of the Magistrate Judge regarding the commencement of the statute of limitations, objects to the finding that he has failed to state a federal claim, and objects to the standard applied to his actual innocence claim. (Objections at 1-11.) He also seeks leave to amend his Petition to clearly state the federal basis for his claims (Pet.'s Amended

Mot. to Amend at 1-9), and seeks discovery of any exculpatory evidence in Respondent's possession.  (Pet.'s Mot. for Discovery [Doc. No. 41] at 1-8.)

## II.   Statute of Limitations

The one-year statute of limitations begins to run at the latest of-

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C.A. § 2244(d)(1)(A)-(D) (West 2006).

With respect to section 2244(d)(1)(A), Petitioner's conviction became final on June 7, 1999, the last day he could have filed a petition for a writ of certiorari in the United States Supreme Court following the March 9, 1999 denial by the state supreme court of his petition for review.  Smith v. Duncan, 297 F.3d 809, 813 (9th Cir. 2002).  With respect to section 2244(d)(1)(B), Petitioner contends an impediment was created by the state because it engaged in a "cover-up" by refusing to inform him of the information provided by Jackson upon which Lee's conviction was vacated, and by making Jackson unavailable by keeping him in the witness protection program.  (Traverse at 3-4.)  The Magistrate Judge found that the information provided to Lee's counsel did not exonerate Petitioner and therefore did not have to be provided to Petitioner's counsel, that in any case Petitioner was likely to have been aware of the information contained in the letter no later than August 31, 2000, the date Lee was granted habeas relief, and that measuring two and one-half years from the date of the letter, July 14, 1998, the "cover-up" had ended by December 2000.  (R&R at 9-10.)  The Court declines to adopt these findings.

When the R&R was issued, the record was unclear as to exactly when Petitioner became aware of the information contained in the July 14, 1998 letter.  A review of the state habeas petition shows that Petitioner's habeas counsel was aware of the information in the letter by at least April 20, 2001, by which time he had conducted an investigation based on the information provided by Lee's counsel and had received a letter from Vinson stating that Jackson was the driver of the vehicle from which the Parish brothers were shot.  (Lodgment No. 12 at 5.)  The Magistrate Judge assumed that the two and one-half year "cover-up" alleged by Petitioner ran from July 14, 1998 until December 2000.  (R&R at 9-10.)  Petitioner now contends that the "cover-up" began in September 2000 and ended in January 2003 when he first became aware of the contents of the letter, and that it constitutes a state-created impediment to presenting his claims.  (Objections at 3.)  Petitioner filed a pro se habeas petition in the appellate court in January 2003 which contains a photocopy of the description of the letter which was presented by his counsel in the habeas petition filed in the trial court.  (Lodgment No. 17 at 22.)

Assuming an impediment was created by the failure of the District Attorney to share the information contained in the July 14, 1998 letter with Petitioner or his counsel, any such impediment was lifted sometime before April 20, 2001, when counsel was contacted by Vinson. Even to the extent Petitioner contends there was an impediment to filing his state habeas petition until May 6, 2002, when he was finally able to secure the Daniels declaration, which appears to be the first time he possessed direct admissible evidence that Jackson was the driver, the calculation of the statute of limitations would not change for the reasons discussed immediately below.  Petitioner's contentions that he only became aware of the existence of the letter in January 2003, and did not secure a copy of the letter until after he filed his federal habeas Petition, also does not change the calculation for the reasons discussed below.

28 U.S.C. 2244(d)(1)(C) does not apply here.  With respect to section 2244(d)(1)(D), the statute of limitations begins to run on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."  The Magistrate Judge found that Petitioner was aware of the factual predicate of his claims no later than December 2000, based on Petitioner's contention that he did not become aware of the July

14, 1998 letter for two and one-half years, and that the information provided by Vinson, Johnson and Daniels was merely derivative of the information provided in the July 14, 1998 letter. (R&R at 10.)  The Court declines to adopt this finding because the information contained in the July 14, 1998 letter does not indicate that Jackson was the driver, and therefore the information contained in the Vinson, Johnson and Daniels declarations is not derivative of the information provided by Jackson.  Rather, the record indicates that Petitioner's counsel conducted an independent investigation after being informed at an unstated time by Lee's counsel of the results of an investigation conducted by Lee's counsel, and that Petitioner's counsel became aware of information implicating Jackson as the driver at least by April 20, 2001, when counsel states he received a letter from Vinson in which Vinson said that Jackson was the driver. (Lodgment No. 12 at 5.)  Although expansion of the record might indicate that Petitioner or his counsel became aware of the information contained in the July 14, 1998 letter even earlier, an earlier date would not benefit Petitioner.  As discussed below, setting this date at January 2003 when Petitioner contends he first learned of the contents of the letter does not change the outcome.

A difficulty arises in determining when Petitioner or his counsel became aware of the factual predicate of the claim, however, because although Petitioner's counsel indicated that Vinson told him in a letter that Jackson was the driver of the vehicle, the declaration ultimately submitted by Vinson does not contain such direct evidence.  (Id. at 19-20.)  In fact, neither the Vinson declaration, dated May 6, 2001, nor the Johnson declaration, dated July 26, 2001, provide direct evidence that Jackson was the driver.  (See id. at 19-22.)  It is only with the Daniels declaration, dated May 6, 2002, that Petitioner was in possession of direct admissible evidence that Jackson was the driver.  (Id. at 24-25.)  Thus, there are two possible dates upon which Petitioner could be found to be aware of the factual predicate of his claim that the prosecution withheld evidence regarding Jackson, the April 20, 2001 date that counsel received a letter from Vinson, or the May 6, 2002 date when counsel obtained the Daniels declaration. The ultimate determination of timeliness does not rest on which of these dates is used to start the statute of limitations, and does not change if the date is set at January 2003, the date Petitioner

contends he became aware of the contents of the July 14, 1998 letter.  The Court rejects Petitioner's implied contention that he did not become aware of the factual predicate of his claim, or that an impediment to presenting his claim was not lifted, until he actually received a copy of the letter after initiating his federal habeas proceedings.  By his own admission he was aware of the contents of the letter and in possession of the Daniels declaration in January 2003.

In sum, the one-year statute of limitations began to run either on April 20, 2001, May 6, 2002, or January 2003, and the instant Petition, filed on May 15, 2005, is untimely unless Petitioner is entitled to tolling of the limitations period.  Petitioner's attorney filed the first state habeas petition in the superior court on May 14, 2002, which was denied on December 17, 2002. (Lodgment Nos. 12-13.)  Petitioner, acting pro per, constructively filed a habeas petition based on the same evidence in the appellate court on January 29, 2003.  (Lodgment No. 17.)  That petition was denied on May 23, 2003, for essentially the same reasons given by the trial court. (Lodgment No. 18, In re Stewart, No. D041599, slip op. at 3-4 (Cal.App.Ct. May 23, 2003.) Petitioner presented those same claims in a pro se habeas petition constructively filed in the state supreme court on August 31, 2003, which was denied on August 11, 2004 by an order which stated: "Petition for writ of habeas corpus is DENIED."  (Lodgment Nos. 19-20.)

To the extent the one-year statute of limitations began to run on April 20, 2001, Petitioner is not entitled to statutory tolling because the first state habeas petition was filed more than one year later, on May 14, 2002.  To the extent Petitioner did not become aware of the factual predicate of his claims until he secured the Daniels declaration on May 6, 2002, and the statute of limitations began to run the next day, see Patterson v. Stewart, 251 F.3d 1243, 1246 (9th Cir. 2001), only seven days ran before tolling began when he filed his first state habeas petition on May 14, 2002.  Assuming he would be entitled to statutory tolling from May 14, 2002, when he initiated state habeas proceedings, until August 11, 2004, when the state supreme court denied his final petition, Petitioner had 358 days remaining as of August 11, 2004.  He filed the instant Petition 277 days later, on May 15, 2005, the date he handed it to prison officials for mailing to the Court (Pet. at 11), and under that scenario the Petition is timely.  Even assuming that the statute of limitations began to run when Petitioner became aware of the existence of the letter

in January 2003, at a time when the statute of limitations was being statutorily tolled, he would have 365 days remaining if statutory tolling ended on August 11, 2004, and the Petition would be timely under that scenario.

However, the statute of limitations is only statutorily tolled while a "properly filed" state habeas corpus petition is "pending" in the state court. 28 U.S.C. § 2244(d)(2). In <u>Carey v. Saffold</u>, 536 U.S. 214 (2002), the Court held that the time between the denial of a petition in a lower California court and the filing of a subsequent petition in the next higher state court does not toll the statute of limitations (i.e., an application for post-conviction relief is not "pending" during the interstitial periods while one is pursuing a full round of state collateral review) if the petition is untimely. <u>Id.</u> at 223-26. In <u>Pace v. DiGuglielmo</u>, 544 U.S. 408 (2005), the Court held that statutory tolling is not available for the period a petition is under consideration (i.e., an application for post-conviction relief is not "properly filed") if it is untimely. <u>Id.</u> at 413-14. In <u>Evans v. Chavis</u>, 546 U.S. 189 (2006), the Court held that in the absence of a clear indication by the state supreme court that a petition is untimely, the federal court "must itself examine the delay in each case and determine what the state courts would have held in respect to timeliness." <u>Id.</u> at 198.

The appellate court denied relief on May 23, 2003, and Petitioner filed his subsequent habeas petition in the state supreme court on August 31, 2003, a delay of 100-days. In the state petition form where Petitioner is required to explain any delay in raising the claims within the meaning of <u>In re Swain</u>, 34 Cal.2d 300, 304 (1949),[2] he wrote: "The investigation regarding newly discovered evidence was not complete until May of 2002." (Lodgment No. 19 at 48.) The state supreme court denied the petition with an order which stated: "Petition for writ of habeas corpus is DENIED." (Lodgment No. 20.) Lacking an indication regarding timeliness, this Court must examine the delay "and determine what the state courts would have held in

---

[2] At page 304 of the <u>Swain</u> opinion, the state supreme court states: "We are entitled to and we do require of a convicted defendant that he allege with particularity the facts upon which he would have a final judgment overturned and that he fully disclose his reasons for delaying in the presentation of those facts. This procedural requirement does not place upon an indigent prisoner who seeks to raise questions of the denial of fundamental rights in propria persona any burden of complying with technicalities; it simply demands of him a measure of frankness in disclosing his factual situation." <u>Swain</u>, 34 Cal.2d at 304.

respect to timeliness." <u>Chavis</u>, 546 U.S. at 198.  Petitioner's explanation for the delay is an unacceptable excuse under <u>Swain</u> because he was aware of the factual basis for the claim in May 2002, over a year before he filed the state supreme court habeas petition.  Additionally, there is no indication that Petitioner was conducting an ongoing investigation, as a comparison of the appellate court habeas petition and the state supreme court habeas petition reveals that Petitioner presented the same claims in both petitions and did not support the state supreme court petition with any evidence which was not presented to the state appellate court.  (<u>Compare</u> Lodgment No. 17 <u>with</u> Lodgment No. 19.)  Thus, the more than three-month delay here was completely unjustified under state law.  <u>Swain</u>, 34 Cal.2d at 304; <u>In re Robbins</u>, 18 Cal.4th 770, 805 (1998) (holding that a habeas claim "that is substantially delayed will nevertheless be considered on the merits if the petitioner can demonstrate 'good cause' for the delay."); <u>In re Gallego</u>, 18 Cal.4th 825, 838 n.13 (1998) (stating that a petitioner may establish good cause for delay under <u>Robbins</u> if he "was conducting a bona fide ongoing investigation (based upon known or triggering facts) into another claim or claims and withheld the completed claim to avoid the piecemeal presentation of claims.")  Because Petitioner provided no basis for a finding of good cause nor any other excuse justifying the 100-day delay, the delay was "unreasonable" within the meaning of California law, and the state supreme court habeas petition was neither "properly filed" nor "pending" within the meaning of 28 U.S.C. § 2244(d)(2).  <u>See</u> <u>Chavis</u>, 546 U.S. at 199-200 (stating that in determining whether a filing delay was "reasonable" under California law, federal courts must "keep in mind that, in *Saffold*, we held that timely filings in California (as elsewhere) fell within the federal tolling provision *on the assumption* that California law in this respect did not differ significantly from the laws of other States" which provide time periods of 30 to 60 days between filings) (emphasis in original); <u>see e.g.</u>, <u>Culver v. Director of Corrections</u>, 450 F.Supp.2d 1135, 1140-41 (C.D. Cal 2006) (finding unexplained and unjustified delays of 71 and 97 days unreasonable under California law).  As a result, statutory tolling is unavailable anytime after May 23, 2003.  At that time, Petitioner had either 358 days remaining on the statute of limitations or 365 days, depending on whether the trigger date is May 6, 2002 or January 2003.  The instant Petition was filed on May 15, 2005, nearly two years later, and nearly

1    a year after the statute of limitations expired.  Accordingly, statutory tolling does not aid

2    Petitioner.

3         The statute of limitations is also subject to equitable tolling.  Calderon v. United States

4    Dist. Court (Beeler), 128 F.3d 1283, 1288 (9th Cir. 1997), overruled on other grounds by

5    Calderon v. United States Dist. Court (Kelly), 163 F.3d 530, 540 (9th Cir. 1998).  However, the

6    Ninth Circuit in Beeler noted that "[e]quitable tolling will not be available in most cases, as

7    extensions of time will only be granted if 'extraordinary circumstances' beyond a prisoner's

8    control make it impossible to file a petition on time."  Id. (quoting Alvarez-Machain v. United

9    States, 107 F.3d 696, 701 (9th Cir. 1996)); Corjasso v. Ayers, 278 F.3d 874, 877 (9th Cir. 2002).

10   The burden is on Petitioner to show that the "extraordinary circumstances" he has identified

11   were the proximate cause of his untimeliness, rather than merely a lack of diligence on his part.

12   Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003); Stillman v. LaMarque, 319 F.3d 1199,

13   1203 (9th Cir. 2003).  Equitable tolling "is unavailable in most cases."  Miles v. Prunty, 187 F.3d

14   1104, 1107 (9th Cir. 1999).  "[T]he threshold necessary to trigger equitable tolling (under

15   AEDPA) is very high, lest the exceptions swallow the rule."  Miranda v. Castro, 292 F.3d 1063,

16   1066 (9th Cir. 2002).

17        Petitioner had at least implied knowledge of the factual basis of his claims as early as

18   May 2002, when his attorney filed the first state habeas petition.  (Lodgment No. 19 at 48.)

19   Even assuming equitable tolling was available until January 2003 when Petitioner filed his pro

20   se habeas petition in the appellate court, which is when he contends he first became aware of the

21   contents of the letter, and the statute of limitations did not began to run until statutory tolling

22   ended on May 23, 2003, the Petition is untimely under the calculations discussed immediately

23   above.  Petitioner's contention that equitable tolling is available due to: (1) the continued refusal

24   of the prosecutor to turn over the statement made by Jackson; (2) the refusal to make Jackson

25   available; (3) the refusal to disclose the file regarding Jackson's cooperation on this and other

26   cases; and/or (4) because he did not actually receive a copy of the July 14, 1998 letter until after

27   he initiated his federal habeas proceedings, is unavailing.  Although Petitioner alleges that if he

28   were given access to this material he might be able to establish that Jackson was the driver based

on more credible evidence than the Vinson, Johnson and Daniels declarations, or might be able to finally prove that the prosecution has withheld exculpatory evidence, the lack of access to this material was not the proximate cause of his delay in filing the state supreme court habeas petition.  Accordingly, equitable tolling does not render the Petition timely.

The Magistrate Judge also concluded that Petitioner is not entitled to avoid operation of the statute of limitations based on his claim of actual innocence because he had not met the standard set forth in Schlup v. Delo, 513 U.S. 298 (1995).  (R&R at 12-14.)  The Magistrate Judge found that Petitioner had not demonstrated that the new evidence makes it more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt, because the declarations of Vinson, Johnson and Daniels are not credible for the reasons set forth by the state courts, and because the evidence presented by Jackson which led to the overturning of Lee's conviction does not prove that Petitioner is innocent, but in fact confirms Petitioner's guilt.  (R&R at 12-14.)  The Court declines to adopt these findings and will consider the issue in the first instance.

In Schlup, a capital case, the petitioner claimed he was actually innocent of the murder for which he was convicted, and that his conviction was obtained as a result of the withholding of evidence by the prosecution in violation of Brady, and in violation of his right to the effective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984).  Schlup, 513 U.S. at 307.  The Court noted that because the petitioner had failed to establish cause and prejudice sufficient to overcome a procedural default, he would be able to "obtain review of his constitutional claims only if he falls within the 'narrow class of cases . . . implicating a fundamental miscarriage of justice.'"  Id. at 314-15, quoting McCleskey v. Zant, 499 U.S. 467, 494 (1991).  The Schlup Court noted that because the claim for relief at issue "depends critically on the validity of his *Strickland* and *Brady* claims, Schlup's claim of innocence is thus 'not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits."  Schlup, 513 U.S. at 315, quoting Herrera v. Collins, 506 U.S. 390, 404 (1993) (recognizing that the "body of our habeas jurisprudence makes clear that a claim of 'actual innocence' is not itself a constitutional claim,

but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.")  The Supreme Court has therefore made clear that an assertion of actual innocence is not itself a constitutional claim, but a gateway available to have otherwise barred claims considered on the merits.  Id.; see also House v. Bell, 547 U.S. 518, 539 (2006) (noting that the case at hand involved a "federal habeas petition seeking consideration of defaulted claims based on a showing of actual innocence.")

In order to pass through *Schlup's* gateway, and have an otherwise barred constitutional claim heard on the merits, a petitioner must show that, in light of all the evidence, including evidence not introduced at trial, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" Majoy v. Roe, 296 F.3d 770, 775-76 (9th Cir. 2003), quoting Schlup, 513 U.S. at 327.  In applying this standard, "A petitioner need not show that he is 'actually innocent' of the crime he was convicted of committing; instead, he must show that '"a court cannot have confidence in the outcome of the trial."'" Majoy, 296 F.3d at 776, quoting Carriger v. Stewart, 132 F.3d 463, 478 (9th Cir. 1987) (en banc), quoting Schlup, 513 U.S. at 316.

In Majoy, the petitioner was convicted of non-capital murder and conspiracy to commit murder, and sentenced to life imprisonment.  There, as here, the federal habeas petition was found by the district court to be barred by the statute of limitations after rejecting petitioner's contentions that a state-created impediment extended the deadline, that he did not discover the factual basis for his claims until a time which would render his petition timely, and that equitable tolling was available.  Majoy, 296 F.3d at 772.  Evidence was presented at Majoy's trial in the form of statements made to the police by an accomplice who was "unavailable" at trial due to his refusal to testify, and in the form of the preliminary hearing testimony of the accomplice, which "furnished the foundation for Majoy's conviction."  Id. at 773.  That evidence had been called into question after trial when the accomplice wrote letters to the trial court stating that he had falsely implicated Majoy due to police prompting and coercion.  Id.  The Ninth Circuit held that if a fact-finder could conclude that the claims of the accomplice were credible, then, in light of other evidence negating Majoy's culpability, "the *Schlup* gateway would seem to open," and

petitioner "might fall within the narrow class of cases implicating a fundamental miscarriage of justice." Id. at 776.  The Court went on to state that: "If he does, the question to be answered is whether surviving the rigors of this gateway has the consequence of overriding AEDPA's one-year statute of limitation, a legal question not yet decided by this Circuit or the Supreme Court. If the answer to this question is in the affirmative, then his otherwise-barred claims must be heard on the merits." Id. (footnote omitted).  The Court in Majoy remanded to the district court with instructions to develop the record with respect to the "gateway" claim, and determine whether the claim was factually meritorious, prior to consideration of whether the claim was jurisdictionally barred by the one-year statute of limitations.  Id. at 776-78.

Here, Petitioner relies on the declarations of Vinson, Johnson and Daniels to support his actual innocence contention.  He also contends that if he could obtain access to Jackson and/or the District Attorney's file regarding Jackson's cooperation in this and other cases, he might discover evidence proving that Jackson was the driver of the car, might be able to refute the unsupported contention that Jackson said that Petitioner was the driver, and might be able to bolster his claim that the Parish brothers were pressured to falsely identify Lee and Petitioner, and that the District Attorney is involved in a cover up.  Petitioner's burden at the threshold of the Schlup gateway is to demonstrate that it is "more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt." Bell, 547 U.S. at 538; Schlup, 513 U.S. at 329; Majoy, 296 F.3d at 778.  In making that determination, this Court "must consider all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." Bell, 547 U.S. at 538 (internal quotation marks omitted).

The July 14, 1998 letter reported the substance of Jackson's statement, namely, that Jackson said that when Petitioner and Adkins told Lee about the Parish brothers shooting, Lee became excited and the group left to conduct another shooting in which Lee killed a man. (Traverse Ex. A.)  Although the letter states that Jackson's attorney said that "Jackson related to him that [Petitioner] and Arnold Adkins (not Richard Lee) were actually the people who shot the Parish brothers," the actual statement by Jackson, as reported in the letter, merely states that

Petitioner and Adkins "told Lee about the Parish brothers shooting." (Id.) Petitioner argues that this is third-hand information which, aside from the fact that Jackson's statement does not directly implicate Petitioner as the driver, lacks an adequate basis as to how Jackson acquired knowledge that Petitioner was the driver, and that the circumstances of the District Attorney relying on such evidence to take the extreme measure of overturning a jury verdict and vacating Lee's conviction shows that the District Attorney: (a) knows that the Parish brothers committed perjury at Petitioner's trial when they identified Lee and Petitioner as the perpetrators; (b) knows that Jackson's intimate knowledge of the shooting came from Jackson's participation in that crime; (c) is willing to go to any length to protect Jackson's credibility because he is the chief prosecution witness in other cases; and (d) conceded habeas relief to Lee in order to avoid an evidentiary hearing where this information would be revealed.  (Traverse at 9-12.)

Petitioner attempts through his Motion for Discovery to obtain information which he contends might establish that Jackson never provided evidence that Petitioner admitted to being the driver, that Jackson lied to his attorney in order to entice the District Attorney to place him in the witness protection program and/or to avoid punishment for being the driver of the car during the shooting of the Parish brothers, and that the District Attorney is aware of these alleged facts as well as improprieties surrounding the investigation of the shooting but continues to cover them up to protect Jackson.  (Pet.'s Mot. for Discovery at 2-8.)  If Petitioner can obtain credible evidence that Jackson was the driver of the car, he may be able to fit through the Schlup gateway.  The Court finds that it is appropriate to reserve ruling on this issue until after ruling on Petitioner's Motion for Discovery.  See Majoy, 296 F.3d at 776-78.  The Court takes no position at this time as to the merits of Petitioner's Motion for Discovery, that is, whether Petitioner is entitled to the discovery sought, whether in camera review of the materials is necessary, or whether such discovery is barred under 28 U.S.C. § 2254(c) for example, but merely finds that a response would be useful in addressing the motion.

In sum, the instant Petition was filed after expiration of the one-year statute of limitations and is subject to dismissal on that basis, with the caveat that the Ninth Circuit has left open the possibility that Petitioner may avoid dismissal if he can pass through the Schlup gateway.  The

Court will reserve ruling on that issue until after ruling on the Motion for Discovery.

**III.     Motion for Leave to Amend**

Petitioner has filed an Amended Motion for Leave to Amend his Petition in response to the Magistrate Judge's finding that he had failed to state a federal claim, and in particular that he made only vague references to the Fourteenth Amendment right to due process in connection to his claim involving failure of the prosecutor to turn over the statements of William Allen. (Doc. No. 50.) Petitioner attaches a proposed amended petition presenting the following claims: (1) a claim alleging a violation of Brady and Giglio v. United States, 405 U.S. 150, 154 (1972) (holding that the prosecutor has a duty to disclose to the defense before trial all promises, inducements or threats made to a witness to gain cooperation in the investigation or prosecution), based on the failure of the prosecution to disclose that they knew, prior to prosecution witness Kevin Brown's testimony that Petitioner had confessed, that William Allen had made a statement impeaching Brown; (2) a prosecutorial misconduct claim based on the same allegations as claim one; (3) a Brady/Giglio claim based on the failure of the prosecution to turn over information implicating Jackson as the driver; and (4) an actual innocence claim. (Pet.'s Amended Mot. to Amend [Doc. No. 50] Ex. A.)

With respect to claims one and two in the proposed amended petition, Petitioner contends, as he did in the appellate court on direct appeal, that the prosecution's case essentially turned on a statement Petitioner made to Kevin Brown that purported to be a confession that Petitioner had killed one of Brown's "home-boys." (Lodgment No. 3 at 1-2.) Brown stated that when he saw Petitioner speaking to William Allen after football practice at Grossmont College, Petitioner stopped talking to Allen and called Brown over to him, and that Petitioner made the statement to Brown while Allen was standing about 20 feet away. (Id.) Petitioner contends now, as he did on appeal, that the prosecutor violated Brady by failing to disclose that a prosecution investigator interviewed Allen and that Allen stated that he was not at Grossmont College talking with Petitioner at any time relevant to when the alleged confession was made. (Id. at 2-4.) The appellate court denied the claim on the basis that, assuming the information should have been turned over to the defense: "Given the overwhelming direct evidence against Stewart, it is not

1   reasonably probable that the outcome of the trial would have been different if Allen, Stewart's

2   friend and a former member of the same gang, had testified that he had never seen Stewart at

3   Grossmont College." (Lodgment No. 7, <u>People v. Lee, et al.</u>, No. D026580, slip op. at 14.)

4         Although Petitioner presented these contentions in the original Petition, it was unclear

5   whether this was a separate <u>Brady</u> claim or simply argument in support of his actual innocence

6   claim. (<u>See</u> Pet. at 8a-8b.) Petitioner requests leave to amend in order to clarify that he is

7   presenting federal claims alleging prosecutorial misconduct and <u>Brady/Giglio</u> violations, and

8   not, as he contends the Magistrate Judge found, merely a vague reference to due process. (Pet.'s

9   Amended Mot. to Amend at 1-2, citing R&R at 16.)

10        Petitioner is correct that because the factual basis of this claim was presented in the

11  original Petition, although perhaps not clearly as a separate <u>Brady/Giglio</u> claim, the claim relates

12  back to the original Petition for purposes of the statute of limitations. <u>See</u> <u>Mayle v. Felix</u>, 545

13  U.S. 644, 664 (2005) (holding that relation back requires that the claims be "tied to a common

14  core of operative facts.") However, as set forth above, the Court has already found that the

15  original Petition is untimely and is reserving ruling on whether Petitioner can avoid the operation

16  of the statute of limitations by fitting through the <u>Schlup</u> gateway. As such, whether claims one

17  and two in the proposed amended petition relates back to the original Petition has no effect on

18  the calculation of the statute of limitations.

19        Thus, Petitioner is in essence seeking to recast and clarify the claims and allegations

20  presented in the original Petition in order to ensure they are presented as federal claims, and to

21  ensure that the Court treats his "actual innocence claim" as an assertion that he is entitled to have

22  his otherwise barred claims heard on their merits. Under a liberal construction of the proposed

23  amended petition, Petitioner seeks to present prosecutorial misconduct and <u>Brady/Giglio</u> claims

24  based on the failure of the prosecution to turn over exculpatory information regarding Allen

25  (claims one and two) and Jackson (claim three), and argues that his claims should be considered

26  on their merits notwithstanding the failure to present them within the statute of limitations

27  because he can fit through the <u>Schlup</u> gateway (claim three). Leave to amend after an Answer

28  has been filed, as here, "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a).

There appears to be no prejudice to Respondent to permit the filing of the proposed amended petition as the claims in the amended petition merely recast those claims presented in the original Petition and do not present any new factual allegations.  Moreover, the Court will only reach the merits of the claims if Petitioner fits through the <u>Schlup</u> gateway.

Accordingly, the Court **GRANTS** Petitioner's Amended Motion to Amend.  The Clerk of Court is **DIRECTED** to file a copy of the proposed amended petition as an original First Amended Petition in his action.  Because the First Amended Petition will become the operative pleading in this action upon filing, the Court declines to adopt the findings and conclusions of the Magistrate Judge regarding the merits of the claims presented in the original Petition.

**IV.   Motion for Discovery**

Petitioner has also filed a Motion for Discovery seeking an order directing Respondent to turn over any exculpatory evidence in its possession, including but not limited to Jackson's file regarding his cooperation with the prosecution in this and other cases, and a report written by Investigating Officer Wade at the request of the District Attorney summarizing the effect of Jackson's statement on Wade's investigation into the shooting and accounting for the wrongful conviction of Lee.  (Doc. No. 41.)  In addition to Petitioner's contentions regarding the "cover up" surrounding Jackson, he also contends that Wade is related to the Parish brothers and pressured them to falsely identify Petitioner and Lee as the perpetrators.  (Traverse at 14-15.) Petitioner contends this information will assist him in presenting his <u>Brady/Giglio</u> claims, in challenging the credibility of the victims' eyewitness testimony, and in establishing his factual innocence by demonstrating that Jackson was the driver of the car.  (Pet.'s Motion for Discovery at 2-8.)  As set forth above, the Court finds that resolution of this Motion is appropriate before determining whether Petitioner can satisfy the <u>Schlup</u> standard.  Thus, the Court will direct Respondent to file a response to Petitioner's Motion.

**V.   Briefing Schedule**

Respondent shall file a response to Petitioner's Motion for Discovery within forty-five (45) days of the date this Order is filed.  Petitioner may file a Reply to the response to his Motion for Discovery within thirty (30) days of being served with copies of the responses filed by

Respondent.  The briefing shall be directed to the undersigned District Judge, who will rule on the Motion for Discovery.  Respondent is not required to file an Answer to the First Amended Petition at this time.  After the Court has addressed the discovery issues and has determined whether Petitioner can fit through the <u>Schlup</u> gateway, it will direct further briefing if necessary.

## VI.    Conclusion and Order

The Court **DECLINES TO ADOPT** the findings and conclusions of the Magistrate Judge as presented in the R&R (Doc. No. 37), **GRANTS** Petitioner's Amended Motion for Leave to Amend (Doc. No. 50), **DIRECTS** the Clerk of Court to file a copy of the proposed amended petition (Doc. No. 50, Ex. A) as an original First Amended Petition which will become the operative pleading in this action, and **ISSUES** a briefing schedule regarding Petitioner's Motion for Discovery (Doc. No. 41) requiring Respondent to file a response to the Motion within forty-five (45) days of the date this Order is filed, and providing that Petitioner may file a Reply within thirty (30) days of being served with Respondent's brief.

**IT IS SO ORDERED.**

DATED:  May 30, 2008

Honorable Barry Ted Moskowitz
United States District Judge